UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH GORDON and ANTHONY ARANGO,
individually and on behalf of
all others similarly situated,

     Plaintiffs,

v.                 Case No.: 8:11-cv-2001-T-33EAJ

CHASE HOME FINANCE, LLC,
JPMORGAN CHASE BANK, N.A., and
JPMORGAN CHASE BANK, N.A., as
successor in interest to Chase
Home Finance, LLC,

     Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6) (Doc. # 39), which was filed on December 16, 2011. Plaintiff filed a Response in Opposition to the Motion (Doc. # 47) on January 10, 2012. JPMorgan Chase Bank, N.A. filed a Reply (Doc. # 54) on January 24, 2012.[1] For the reasons that follow, the Court grants the Motion in part and denies the Motion in part.

---

[1] In the Motion to Dismiss, JPMorgan Chase Bank, N.A. indicates that it is the sole defendant in this action because "JPMorgan Chase Bank, N.A. is the successor by merger to Chase Home Finance LLC effective May 1, 2011." (Doc. # 39 at 2). The Court will refer to Defendants simply as "Chase."

I.   <u>**Background**</u>

Chase, a residential mortgage lender and loan servicer, requires borrowers to maintain adequate flood and hazard insurance on residential property securing Chase's loans. (Doc. # 29 at ¶ 1).   When borrowers do not obtain such insurance, Chase purchases insurance for the borrower. <u>Id.</u> Such purchase of insurance is known as "force placement." <u>Id.</u>

Plaintiffs Ruth Gordon and Anthony Arango are residents of Hillsborough County, Florida, and own their home in Tampa, Florida. (Doc. # 29 at ¶ 9).   Plaintiffs refinanced their home with a mortgage from Washington Mutual Bank in 2003, and the loan was later assigned to Chase.   <u>Id.</u>   The mortgage is attached to the Amended Complaint. (Doc. # 29-1).

The mortgage specifies:

> **Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.   This insurance shall be maintained in the amounts  . . . and for the periods that Lender requires.   What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . .   If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.   Lender is under no obligation to purchase any particular type or amount of coverage.   **Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of**

> **Lender, and Borrower acknowledges and agrees that
> Lender's affiliate may receive consideration for
> such purchase.** Therefore, such coverage shall
> cover Lender, but might or might not protect
> Borrower, Borrower's equity in the Property, or the
> contents of the Property, against any risk, hazard
> or liability and might provide greater or lesser
> coverage than was previously in effect. **Borrower
> acknowledges that the cost of the insurance
> coverage so obtained might significantly exceed the
> cost of insurance that Borrower could have
> obtained.** Any amounts disbursed by Lender under
> this Section 5 shall become additional debt of
> Borrower.

(Doc. # 29-9 at 7, ¶ 5)(emphasis added).  The mortgage also

contains a pre-suit notification provision specifying, inter

alia, that Borrower must give Chase written notice of any

alleged breach by Chase and a reasonable period thereafter for

Chase to take corrective action. Id. at 15, ¶ 20.

In 2011, when Plaintiffs' loan balance was $108,018.48,

"Chase Home Finance, LLC decided they needed $250,000 in flood

insurance coverage." (Doc. # 29 at ¶ 10). Plaintiffs bought

the $250,000 flood insurance policy after Chase force-placed

them into a high-premium policy with American Security

Insurance Company ("ASIC") in June 2011. Id.

Plaintiffs allege that Chase has an "exploitative and

self-dealing" arrangement with ASIC:

> Chase purchases all of its force-placed insurance
> from . . . ASIC, at a cost two to twenty times the
> market rate for such insurance.  Under written
> agreements with ASIC, ASIC is the *exclusive*

3

> provider of force-placed insurance for Chase.
> Chase thus agrees not to 'shop around' to obtain a
> fairly priced policy when force-placing borrowers
> with insurance, and to use only ASIC.  Under these
> same written agreements, ASIC returns the favor by
> contractually agreeing to pay a Chase affiliate
> (Chase Insurance Agency) a kickback equal to ten to
> twenty percent of the 'cost' of the policy.

Id. at ¶ 2 (emphasis in original).

Plaintiffs further allege that Chase wrongfully requires borrowers "to carry flood and hazard insurance far in excess of that necessary to protect Chase's interests" because Chase requires borrowers to carry insurance equal to the replacement value of the collateral "even when the amount of money owed to Chase on the debt was far below the replacement value." Id. at ¶ 6. Plaintiffs further allege that "[f]ederal law does not require flood insurance in excess of the outstanding balance owed to the lender.  But Chase sends deceptive and false notices to borrowers that mislead them into believing that federal law require more." Id. at ¶ 7.

The Amended Complaint describes a succession of force-placed flood insurance policies imposed on Plaintiffs and asserts that many others have been treated similarly, supporting class certification.

Plaintiffs' November 22, 2011, Amended Complaint contains the following counts: (1) breach of implied covenant of good

4

faith and fair dealing; (2) breach of fiduciary duty; (3) conversion; (4) declaratory judgment; (5) violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972, et seq.; (6) unjust enrichment; (7) unconscionability; and (8) violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq.  Chase seeks dismissal of the Amended Complaint in its entirety.

## II.   <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As a threshold matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.  "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)).  The Court has considered the mortgage attached to the Amended Complaint but has not considered other documents, such as exhibits to the Motion to Dismiss. By attaching various documents to the Motion to Dismiss, Chase has invited the Court to broaden the scope of its review beyond the four corners of the Amended Complaint. The Court declines to do so.[2]

_____

[2] Although the Court could technically consider the external documents and convert the Motion to Dismiss into a Motion for Summary Judgment pursuant to Rule 12(d), Fed.R.Civ.P., the Court determines that it would not be appropriate to do so.  The discovery deadline is set for

III. **Analysis**

Chase attacks each count of the Amended Complaint based on Rule 12(b)(6) of the Federal Rules of Civil Procedure and also asserts that dismissal is required because Plaintiffs failed to comply with the pre-suit notification requirements of the mortgage.

A. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs submit in their response to the Motion to Dismiss that "Chase breached Plaintiffs' Mortgage Contract, and the implied covenant of good faith and fair dealing." (Doc. # 47 at 5).  While the Amended Complaint contains a count for breach of the implied covenant of good faith and fair dealing, it does not assert a companion breach of contract count.  In addition, while the Amended Complaint alleges that Chase did not act reasonably with respect to paragraph 5 of the mortgage (concerning insurance coverage), Plaintiffs have not alleged in the Amended Complaint that Chase violated any express term of the mortgage.

---

February 1, 2013, and the dispositive motions deadline is set for March 1, 2013. (Doc. # 64). This Court will give the parties an opportunity to conduct discovery before moving forward with Summary Judgment analysis.

Pursuant to <u>Centurion Air Cargo, Inc. v. United Parcel Serv. Co.</u>, 420 F.3d 1146, 1151 (11th Cir. 2005)(citations omitted), "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." <u>See also</u> <u>W. Indies Network-I, LLC v. Nortel Networks</u>, 243 F. App'x 482, 484 (11th Cir. 2007)("no claim for breach of the duty of good faith exists under Florida law independently of an enforceable contract. . . . [T]he good faith requirement does not exist 'in the air.' Rather, it attaches only to the performance of a specific contractual obligation."). Further, as explained in <u>Gibson v. Chase Home Finance, LLC</u>, No. 11-cv-1302-T-23TBM, 2011 U.S. Dist. LEXIS 145122, at *13 (M.D. Fla. Dec. 16, 2011), if a plaintiff fails to identify a breached contract term, a claim for the implied covenant of good faith and fair dealing is "untenable."

Accordingly, as the Amended Complaint does not identify an express term of the mortgage that has been breached, the Court dismisses count one, for breach of the implied covenant of good faith and fair dealing. This dismissal is without prejudice and with leave to amend.

**B.   <u>Unjust Enrichment</u>**

Plaintiffs' unjust enrichment claim is also subject to dismissal. As explained in <u>Williams v. Wells Fargo Bank</u>, No. 11-21233, 2011 U.S. Dist. LEXIS 105513 (S.D. Fla. Oct. 14, 2011), "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." <u>Id.</u> at 32 (internal citations and quotation marks omitted); <u>see also</u> <u>Validsa, Inc. v. PDVSA Servs.</u>, 424 F. App'x 862, 873 (11th Cir. 2001)(affirming district court's dismissal of counterclaim for unjust enrichment due to the existence of an express contract).

A party may "plead in the alternative for relief under an express contract and for unjust enrichment" but only when "one of the parties asserts that the contract governing the dispute is invalid." <u>Williams</u>, 2011 U.S. Dist. LEXIS 105513, at *33. Here, the parties do not dispute the existence of an express contract governing their transaction, the mortgage, and, accordingly, the equitable remedy of unjust enrichment is not available.   The Court therefore dismisses count six, for unjust enrichment as a matter of law and with prejudice.

C.   **Breach of Fiduciary Duty**

"A fiduciary relationship is based on trust and confidence between the parties where confidence is reposed by one party and trust accepted by the other." White Constr. Co. v. Martin Marietta Materials, Inc., 633 F. Supp. 2d 1302, 1325 (M.D. Fla. 2009)(internal citations omitted).  "To state a claim for breach of a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  Id.

Under Florida law, a lender does not ordinarily owe a fiduciary duty to its borrower. See, e.g., Keys Jeep Eagle, Inc. v. Chrysler Corp., 897 F. Supp. 1437, 1443 (S.D. Fla. 1995)(holding that a financing agreement does not create fiduciary duties under Florida law); Metcalf v. Leedy, Wheeler & Co., 191 So. 690, 693 (Fla. 1939)(holding that, in an arms-length transaction, there is no duty on either party to act for the benefit or protection of the other party); Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994)("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which the parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.").

However, a number of courts have recognized narrow circumstances that may give rise to a fiduciary relationship between a bank and its customer. See Jaffe v. Bank of Am., N.A., 395 F. App'x 583, 590 (11th Cir. 2010)("[S]pecial circumstances may impose a fiduciary duty where the lender receives any greater economic benefit than from a typical transaction."); Capital Bank, 644 So. 2d at 521("[W]e recognize a fiduciary relationship between a bank and a customer where the bank knows or has reason to know of the customer's trust and confidence under the circumstances exceeding an ordinary commercial transaction . . . . Where the lender has voluntarily assumed additional roles, accompanying responsibilities properly follow.").

Here, the Court determines that the Amended Complaint adequately states a claim for breach of fiduciary duty. This is because Plaintiffs allege that Chase received a greater economic benefit from the typical mortgage transactions in the form of "kickbacks." Thus, the Motion to Dismiss is denied as to count two.

### D.   Conversion

Under Florida law, conversion is an unauthorized act that deprives another of his property permanently or for an indefinite time. See Tambourine Comercio Int'l S.A. v. Solowsky,

312 Fed. App'x 263, 271 (11th Cir. 2009).  A conversion claim for money requires proof that the funds are specific and identifiable.  Id. at 272.  The essence of a conversion claim is "a wrongful deprivation of property."  Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So. 2d 858, 860 (Fla. 1948).

Plaintiffs argue that "Chase is liable for conversion of the amounts that it charged Plaintiffs for excessive flood insurance [and] the amounts it charged to Plaintiffs for the 'cost' of flood insurance to the extent that these 'costs' were returned to Chase as kickbacks." (Doc. # 47 at 12). Chase, on the other hand, asserts that no conversion has taken place as a matter of law because Plaintiffs authorized the challenged transactions when Plaintiffs signed the mortgage.

After considering these arguments, the Court determines that Chase is correct.  The mortgage warns Plaintiffs that Chase may purchase flood insurance from an affiliate for consideration and that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained." (Doc. # 29-9 at 7, ¶ 5). Chase's actions with respect to flood insurance were not necessarily favorable to Plaintiffs, but they do not rise to the level of conversion because they were authorized by language in the mortgage.  Accordingly, the Motion to Dismiss

is granted as to count three, with prejudice and without leave to amend.

### E.   Unconscionability

Plaintiffs seek an Order "limiting the application of the unconscionable mortgage provisions by restricting Chase to require only an amount of insurance coverage that is required by law, and nothing more." (Doc. # 29 at ¶ 178).  Plaintiffs do not seek money damages as to this count.

To prevail on an unconscionability claim, a plaintiff must demonstrate procedural and substantive unconscionability. Bland v. Health Care & Ret. Corp. of Am., 927 So. 2d 252, 256 (Fla. 2d DCA 2006). "Procedural unconscionability relates to the manner in which the contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms." Id.  Substantive unconscionability, on the other hand, "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." Id. (internal citations and quotation marks omitted).  That is, "no man in his senses and not under delusion would make [the contract] on the one hand, and [] no honest and fair man would accept [it] on the other." Woebse v.

13

Health Care & Ret. Corp. of Am., 977 So. 2d 630, 632 (Fla. 2d
DCA 2008).

The Amended Complaint addresses both procedural and
substantive unconscionability and includes allegations that
raise Plaintiffs' right to relief beyond the speculative
level. As to procedural unconscionability, Plaintiffs contend
that "the disparity in means and bargaining power leaves Class
Members obtaining loans from Chase no real option regarding
the language of the loan or Chase's purchases or policies
during the life of the loan." (Doc. # 29 at ¶ 174). Plaintiffs
further allege that Chase's actions are procedurally
unconscionable because "they give the borrower no opportunity
to prove that their existing coverage is sufficient to cover
Chase's interest in their property.  Instead, borrowers are
required to prove that they have whatever amount of insurance
Chase demands or face force-placement in a policy that charges
more than twice the market rate." Id. at ¶ 175.

As to substantive unconscionability, Plaintiffs allege,
"Class Members are required to obtain far more insurance than
they could be required to maintain under Federal law. Chase's
practices under the mortgage contract are so abusive and
unfair as to shock the conscience." Id.  In light of these

allegations, the Court denies the Motion to Dismiss as to count seven, for unconscionability.

###### F.   <u>Truth in Lending Act</u>

The declared purpose of the Truth in Lending Act, 15 U.S.C. § 1601, et seq., is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998)(citing 15 U.S.C. § 1601(a)).

Chase correctly argues in the Motion to Dismiss that Plaintiffs have failed to identify which provision of TILA Plaintiffs are traveling under.   Although the Court is required to construe TILA claims "liberally in favor of the consumer," <u>Bragg v. Bill Heard Chevrolet</u>, 374 F.3d 1060, 1065 (11th Cir. 2004), the Court nevertheless agrees that Plaintiffs fail to "give Chase fair notice of the basis of [Plaintiffs'] claim and the grounds upon which it rests." (Doc. # 39 at 14).  As this Court has already determined that it is appropriate to allow Plaintiffs to file a Second Amended Complaint, the Court grants the Motion to Dismiss without prejudice as to count eight under TILA. The Court directs

15

Plaintiffs to replead that count with sufficient specificity,
including the relevant statutory provision at issue, in order
to give Defendant fair notice of the bounds and basis of the
TILA claim.

G. **Anti-tying Provision of the Bank Holding Company Act**

As explained in Baggett v. First National Bank, 117 F.3d
1342 (11th Cir. 1997), "The BHCA was enacted in 1956.  The
original focus of the BHCA was the regulation of the power of
bank holding companies to prevent a small number of powerful
banks from dominating commerce and to ensure a separation of
economic power between banking and commerce."  Id. at 1345.
Congress amended the Act in 1970 to curtail anti-competitive
practices, such as unlawful tying. Id.

> The Act proscribes anti-competitive ties which
> condition the extension of credit on a condition
> designed to increase the economic power of the bank
> and to reduce competition.  Such a tie can manifest
> itself in many different forms.  The bank can
> refuse to extend credit unless the consumer agrees
> to purchase a separate, unrelated bank service (a
> quintessential tie); the bank can condition the
> extension of credit on the consumer providing the
> bank with a specific product or service unrelated
> to the extension of credit (a reciprocal tie), or
> the bank can condition the extension of credit on
> the consumer's agreement not to engage in any
> transactions with one of the bank's competitors (an
> exclusive dealing arrangement).  A tie can manifest
> itself in a number of other ways, but the
> touchstone for actionability under the anti-tying
> provision of the BHCA is that the arrangement be
> designed to lessen competition and increase
> economic power of the creditor bank.

Id. at 1346.

Plaintiffs pursue their BHCA claims under 12 U.S.C. § 1972(1)(B): "A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration of any of the foregoing, on the condition or requirement – that the consumer shall obtain some other additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company."

Plaintiffs have abandoned their first theory, that Defendants have tied the extension of credit in the mortgage to the purchase of force-placed insurance sold by ASIC. (Doc. # 47 at 19, n. 6). Plaintiffs have narrowed their tying allegation as follows: "Chase conditioned its 'service' of purchasing insurance on Chase Insurance, a wholly owned subsidiary of Defendants' holding company, receiving a commission for each force-placed insurance policy." Id. at 19.

In response to the Motion to Dismiss, Plaintiffs urge the Court to allow them to amend in order to streamline their allegations.  As the Court has previously determined that amendment is appropriate, the Court grants the Motion to Dismiss as to count five, under the Bank Holding Company Act, without prejudice and with leave to amend.

**H.**   **Declaratory Judgment**

In count four, Plaintiffs seek a declaration pursuant to Florida's Declaratory Judgment Statute, § 86.021, that paragraph 5 of the mortgage (concerning insurance coverage) is in violation of the BHCA and Florida Statute § 626.9551 and is void as against public policy.[3]

The Court has dismissed Plaintiffs' BHCA claim without prejudice and with leave to amend. The Court therefore grants the Motion to Dismiss as to count four, for declaratory judgment, without prejudice. Plaintiffs may amend this count in the Second Amended Complaint.

**I.**   **Pre-Suit Notification**

Chase correctly points out that Plaintiffs violated the written pre-suit notification requirement contained in the mortgage and argues that this action should be dismissed with prejudice. Although the Court agrees that it would be acting within the bounds of its discretion to dismiss the action due

---

[3] Florida Statute § 626.9551 states that "no person may make an extension   of credit . . . on the condition or requirement that the customer obtain insurance from that person, or a subsidiary or affiliate of that person." Liability under § 626.9551 is coterminous with the Bank Holding Company Act. Section 626.9551 "does not prohibit any person from engaging in any activity that if done by a financial institution would not violate § 106 of the Bank Holding Company Act Amendments of 1970, 12 U.S.C. § 1972, as interpreted by the Board of Governors of the Federal Reserve System."

to Plaintiffs' noncompliance with the pre-suit notification provision, the Court declines to do so.

Plaintiffs admit in their Response to the Motion to Dismiss that they failed to provide written notice to Chase prior to filing suit. Plaintiffs argue that the Court should overlook their failure to provide such notice because such notice would be futile.

The Court determines that it is appropriate to allow Plaintiffs to proceed with this suit despite Plaintiffs' admitted failure to comply with the pre-suit notification provision. At this juncture, a dismissal without prejudice for failure to comply with the pre-suit notification provision would constitute a waste of scarce judicial resources and would unnecessarily prolong this litigation.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. # 39) is granted in part and denied in part as follows:

(A)   The Motion is denied as to counts two and seven.

(B)   The Motion is granted with prejudice as to counts three and six.

(C)   The Motion is granted without prejudice and with
      leave to amend as to counts one, four, five, and
      eight.

(D)   Plaintiffs may file their Second Amended Complaint
      on or before March 20, 2012.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>7th</u>
day of March 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record