## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RUTH GORDON and
ANTHONY ARANGO,
individually and on behalf of
all others similarly situated,

                                Plaintiffs,

      vs.

CHASE HOME FINANCE, LLC,
JP MORGAN CHASE BANK, N.A.,

                             Defendants.

Case No.: 8:11-cv-02001-VMC-EAJ

## JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS COUNTS I, II, IV, V AND VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM, MOTION TO STRIKE JURY DEMAND, AND INCORPORATED MEMORANDUM

Plaintiff Ruth Gordon's[1] Second Amended Complaint ("SAC") fails to cure the deficiencies in her prior pleadings, and she still cannot escape the express terms of her Mortgage, which she concedes provides that insurance must "be maintained in the amounts … and for the periods that Lender requires."  (Ex. 1 to SAC (Dkt. 72-1) (the "Mortgage").)[2]

If Gordon fails to maintain such insurance herself, as she admits she did, the Mortgage also

---

[1] Ruth Gordon and Anthony Arango are joint borrowers on the same mortgage loan.  For simplicity, they are referred to as "Gordon" in this brief.

[2] The Court may consider the exhibits to Plaintiffs' Complaint when ruling on this Motion.  *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x. 915, 917 (11th Cir. 2009), *cert denied*, 130 S. Ct. 115 (2009) *reh'g denied*, 130 S. Ct. 874 (2009); FED. R. CIV. P. 10(c).

expressly allows JPMorgan Chase Bank, N.A. ("Chase")[3] to "purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase." (*Id.*)

Notwithstanding these express Mortgage  provisions, Gordon asserts claims in her SAC complaining about the very conduct authorized by these provisions – Chase's lender placement of flood insurance on her property when she failed to maintain her own adequate coverage.  She brings suit against Chase for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, declaratory judgment, and unconscionability, as well as claims under the Bank Holding Company Act ("BHCA") and the Truth in Lending Act ("TILA").  As discussed below, the following counts of the SAC should be dismissed:

*First*, Gordon's claims for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts I and II) fail because she cannot identify any specific contract term that was allegedly breached.  This is because her Mortgage unambiguously gives Chase discretion to determine the amount of flood insurance that she must maintain and permits Chase to purchase lender placed insurance from or through any company acceptable to Chase, including an affiliate that may receive a commission.  Moreover, Chase did not require Gordon to carry an unreasonable amount of insurance, but only required the amount

---

[3] JPMorgan Chase Bank, N.A. is the successor by merger to Chase Home Finance LLC effective May 1, 2011.  This lawsuit was filed after the merger, when Chase Home Finance LLC no longer existed.

recommended by the guidelines published by the Federal Emergency Management Agency ("FEMA").

*Second*, Gordon cannot state a claim under the BHCA, 12 U.S.C. § 1972 or for declaratory judgment (Counts IV and V) because the BHCA does not apply to Chase here, and even if it did, Gordon has not alleged an anti-competitive tying arrangement in violation of the BHCA.

*Third*, Gordon fails to state a claim under TILA, 12 U.S.C. 1601 *et seq.* (Count VII) because she has not and cannot point to any provision of TILA that Chase allegedly violated.

*Finally*, Gordon's jury trial demand should be stricken because she expressly waived the right in her Mortgage.

## PROCEDURAL HISTORY

Gordon filed her complaint on September 1, 2011.  (Dkt. No. 1.)  Chase filed a motion to dismiss on November 1, 2011 (Dkt. No. 22) and in response, Gordon filed her First Amended Complaint ("FAC") on November 22, 2011.  (Dkt No. 29.)  Chase filed its motion to dismiss the FAC on December 16, 2011.  (Dkt. No. 39.)  On March 7, 2012, the Court granted Chase's motion to dismiss the FAC with prejudice as to Counts III (conversion) and VI (unjust enrichment), and without prejudice with leave to amend as to Counts I (breach of the implied covenant of good faith and fair dealing), IV (declaratory judgment), V (BHCA), and VIII (TILA).  The Court denied Chase's motion to dismiss with respect to Counts II (breach of fiduciary duty) and VII (unconscionability).  (Dkt. No. 68.)  Gordon filed her motion for class certification on March 16, 2012.  (Dkt. No. 72.)  On that same day, she also filed the SAC.

## ARGUMENT

I.   **GORDON CANNOT IDENTIFY THE BREACH OF A SPECIFIC CONTRACT TERM AND THIS IS FATAL TO HER CONTRACT-BASED CLAIMS.**

As this Court previously noted, a "breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." (Dkt. No. 68 at 7-8 (dismissing Gordon's claim for breach of the implied covenant of good faith and fair dealing because she failed to "assert a companion breach of contract count" or to allege an express mortgage term that had been breached).) Attempting to salvage her breach of the implied covenant of good faith and fair dealing claim (Count II), Gordon now seeks to add a claim for breach of contract (Count I), but she still fails to support her claims with allegations that Chase violated any express terms of the Mortgage. (SAC ¶¶ 94-98.) Rather, as she did before, Gordon makes only generic and unsupported allegations that Chase breached "the [unspecified] terms of the mortgage contract." (*Id.* at ¶ 96.) Allegation after allegation generally refer to the "terms of the mortgage" or "the contract," but absent are allegations of specific terms or provisions that Chase allegedly breached. (*See, e.g.*, *id.* at ¶¶ 95-98.)

Indeed, in the SAC, Gordon does not deny the express terms of her Mortgage, citing directly to many provisions of her Mortgage – she just ignores them when she conclusorily alleges that Chase breached her Mortgage agreement. (*See* SAC ¶¶ 94, 98, 104-105.) Gordon's Mortgage provides in relevant part as follows:

> **Borrower** shall keep **the improvements now existing or hereafter erected on the Property** insured against loss by fire, hazards within the term "extended coverage," and any other hazards, including, but not limited to earthquakes and **floods**, for which Lender requires insurance. **This insurance shall be maintained in the amounts**

(including deductible levels) **and for the periods that Lender requires.**   What Lender requires pursuant to the preceding sentences can change during the term of the Loan.   **The insurance carrier providing the insurance shall be chosen by Borrower** …. **If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense**.   Lender is under no obligation to purchase any particular type or **amount** of coverage.   **Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase.**   Therefore, such coverage shall cover Lender, but **might or might not protect borrower [or] Borrower's equity in the Property** … and might provide greater or lesser coverage than was previously in effect.   Borrower acknowledges that the cost of the insurance coverage so obtained **might significantly exceed** the cost of insurance that Borrower could have obtained.   **Any amounts disbursed by Lender** under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

(Mortg. § 5 (emphasis added).)   Despite these express provisions, Gordon asserts that Chase breached her Mortgage: (1) "by charging Plaintiffs for the 'cost' of force-placed flood insurance when a portion of this 'cost' was returned to a Chase affiliate" (SAC ¶ 95); (2) "by imposing charges for kickbacks paid to an affiliate for services as an insurance agent … when no agent services were performed" (*id.* at ¶ 97); and (3) "by requiring coverage exceeding the outstanding loan balance." (*Id.* at ¶ 98.)

First, Gordon alleges Chase breached the Mortgage because commissions are not included in the "cost" of lender-placed insurance.   She alleges the Mortgage defines the "charges" or "costs" that it may impose on Plaintiffs, but she never alleges what provisions govern such charges or how those provisions were breached.   (*Id.* at ¶¶ 95, 97.)   As Gordon acknowledges in the SAC, her Mortgage provides that the "cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained."   (SAC ¶ 94.)   This "cost" is the cost to her as a borrower which is the "amount disbursed by the Lender" to pay for her lender placed flood insurance premium.   (Mortg. §

5.)  Gordon does not allege (because she cannot) that Chase charged her a different amount for the lender placed flood coverage than the premium payments it disbursed to purchase the coverage.

Second, Gordon alleges Chase breached the Mortgage because Chase Insurance Agency, Inc. ("CIA") performed "no agent services" to earn a commission, but she never specifies what these agent services entail or for whom (and why) they were contractually required to be performed.  (SAC at ¶¶ 95-96.)  Nor does she allege what term or provision of the contract would require an affiliate to perform these unidentified "agent services."  As before, Gordon acknowledges but ignores her Mortgage which states that: "Lender may purchase such insurance from or through any company agreeable to the Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges that Lender's affiliate may receive consideration for such purchase."  (Mortg. § 5.)  Gordon cannot support her claims against Chase by merely labeling commissions as "kickbacks" and concluding that a Chase affiliate "performed no agent services." (SAC at ¶¶ 95-96); *see also* Dkt. 68 at 7 (finding it insufficient to only "allege[] that Chase did not act reasonably with respect to paragraph 5 of the mortgage (concerning insurance coverage)"); *Blass v. Flagstar Bancorp, Inc.*, No. 11-80543-CV, 2012 WL 252628, at *5 (S.D. Fla. Jan. 27, 2012) (dismissing plaintiff's claims and finding it insufficient to "[m]erely alleg[e] facts that would show a financial incentive on the part of the Defendants" or "mutually beneficial arrangement that exploits the force-place insurance system" because the "Bank is nevertheless entitled to enforce its contractual right[s]" regarding flood insurance); *Iqbal v. Ashcroft*, 129 U.S. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the

elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"); *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (holding that "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the element of a cause of action will not do.").

Third, Gordon conclusorily alleges Chase breached the Mortgage by requiring flood

insurance coverage in excess of the unpaid balance of her loan.  However, the Mortgage

expressly permits Chase to require coverage in an amount greater than the unpaid balance of

the loan.  Gordon's Mortgage requires that she maintain flood insurance to protect all

"improvements now existing or hereafter erected … in the amounts … and for the periods"

Chase requires, *not the unpaid balance of her loan*. (Mortg. § 5.)  Moreover, Chase did not

require Gordon to carry an unreasonable amount of insurance.  Rather, Chase required

Gordon to maintain flood coverage equal to the replacement cost value ("RCV") of her

property, which is the amount of insurance that FEMA recommends that lenders require

borrowers to carry on their property.  (*See* Dkt. No. 39 at 3-5.)[4]  Several courts, interpreting

analogous mortgage provisions and coverage requirements, have rejected claims like

Gordon's.  *See, e.g.*, *Gibson v. Chase Home Finance, LLC*, No. 8:11-cv-1302-T-23TBM,

2011 WL 6319401, at *4 (M.D. Fla. Dec. 16, 2011) (dismissing claims and holding that

---

[4] Chase's motion to dismiss Gordon's FAC explained insurance requirements under the National Flood Insurance Act ("NFIA") and the guidelines set forth by FEMA, one of the regulatory agencies charged with administering the National Flood Insurance Program.  Chase will not repeat this discussion here other than to say that FEMA directs that a "sound flood insurance risk management approach follows the insurance industry practice of insuring buildings to full RCV" to ensure that "the lender and borrower are both better protected." Dkt. No. 39 at 5; *see also* 42 U.S.C. §§ 4012a(b)(1), 4013; 12 C.F.R. §§ 22.3, 22.7; Loans in Areas Having Special Flood Insurance Hazards; Interagency Questions and Answers Regarding Flood Insurance, 74 Fed. Reg. 35,914, 35,933 (July 21, 2009) ("Full replacement cost is always the preferred insurance amount.").

Chase was "free to demand insurance" over the NFIA minimum "to protect comprehensively Chase's investment in [Plaintiff's unit"); *Kolbe v. BAC Loan Serv., L.P.*, Civ. Action No. 11-10312-NMG, 2011 WL 366 5394, at *2-*3 (D. Mass. Aug. 18, 2011) (finding that mortgage which required flood insurance "in the amounts and for the periods" required by lender unambiguously gave lender discretion to determine appropriate amount of flood insurance and to purchase that insurance on plaintiffs' behalf when they failed to do so), *appeal filed*; *Lass v. Bank of America, N.A.*, Civ. Action No. 11-10570-NMG, 2011 WL 3567280, at *3-*4 (D. Mass. Aug. 11, 2011) (same), *appeal filed*; *Custer v. Homeside Lending, Inc.*, 858 So. 2d 233, 237 (Ala. 2003) (concluding that mortgage which required flood insurance "in such amounts and for such periods as may be required by the Mortgagee" gave lender the right to require a higher amount of flood insurance than the outstanding loan balance); *Hayes v. Wells Fargo Home Mortg.*, Civ. Action No. 06-1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006) (finding that the NFIA establishes a "minimum with which the lender must comply and does not prohibit a contractual agreement whereby the lender may require coverage in an amount greater than the balance of the loan secured by the property vulnerable to flooding.").

Because there is no provision in the Mortgage that limits the amount of insurance that Chase can require to the unpaid balance of the loan, Gordon attempts to cobble one together. Gordon points to flood insurance requirement language that any lender placed insurance "shall cover Lender … against any risk, hazard or liability …." (SAC at ¶ 98.) She then combines that statement with language from a subsequent paragraph on the assignment of insurance proceeds, which states that "Borrower further agrees to generally assign rights to

insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance," to conclude that Chase cannot require insurance coverage in excess of the outstanding loan balance. (SAC at ¶¶ 98, 104.)  Gordon's construction fails for at least two reasons.  First, the "shall cover Lender" provision that Gordon incompletely quotes contains no such limitation, but rather provides: "such coverage shall cover Lender, but *might or might not protect borrower [or] Borrower's equity in the Property.*"  (Mortg. § 5.)  Second, any limitation on Chase's contractual right to receive insurance loss proceeds only up to the loan balance is unrelated to the amount of coverage Chase may lender place because such coverage will cover Chase and "might or might not" cover Gordon or her "equity in the Property." *(Id.)*

Gordon has not and cannot identify a contractual provision that Chase violated, and this is fatal to both her breach of contract and breach of the implied covenant of good faith and fair dealing claims.  As this Court previously noted, the failure to identify the breach of an express term of the Mortgage contract renders a claim for breach of the implied covenant of good faith and fair dealing "untenable."  (Dkt. No. 68 at 8.)[5]  Accordingly, both claims should be dismissed with prejudice.

---

[5] Additionally, Gordon cannot use the implied covenant of good faith and fair dealing to "override an express contractual provision."  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001).  The implied covenant also cannot be used to significantly limit Chase's discretion under the contract, and the implied covenant is not breached "unless no reasonable party would have made the same discretionary decision."  *Id.*  Here, Chase acted pursuant to the express terms of Gordon's Mortgage and consistent with federal guidelines.  Thus, Gordon cannot allege that the implied covenant was breached because she cannot plausibly allege that no reasonable party would have made the same discretionary decision.

## II.   THE COURT SHOULD DISMISS GORDON'S BHCA AND DECLARATORY JUDGMENT CLAIMS.

In her response to Chase's motion to dismiss the FAC, Gordon conceded that her claim under the BHCA was confusing and not pled with sufficient clarity.  (Dkt. No. 47 at 23.)  The Court dismissed Gordon's BHCA and declaratory judgment claims with leave "to amend in order to streamline their allegations."  (Dkt. No. 68 at 17.)  However, Gordon has been unable to remedy the deficiencies of her BHCA claim and the claim also repeats points previously addressed by this Court.[6]  Rather than streamlining her claims, her BHCA claim has only grown and yet, Gordon is no closer to alleging a BHCA claim that applies to Chase or that alleges an anti-competitive tying arrangement.

To state a BHCA anti-tying claim, Gordon must allege facts that show that there was a condition placed on the extension of credit or provision of any bank service and that such condition was:  (1) an unusual banking practice; (2) an anti-competitive tying arrangement; and (3) a practice that benefits the bank.  *See* 12 U.S.C. § 1972(1); *Parsons Steel, Inc. v. First Ala. Bank of Montgomery, N.A.,* 679 F.2d 242, 245 (11th Cir. 1982).  The Eleventh Circuit has adopted a narrow view of BHCA anti-tying claims.  *Parsons Steel, Inc.,* 679 F.2d at 244; *see also Gibson,* 2011 WL 6319401, at *7 ("But the BHCA is not supposed 'to interfere with the conduct of appropriate traditional banking practices.'").   Gordon's BHCA claim fails because: (1) the BHCA does not apply to Chase here, and (2) even if it did, Gordon has not alleged an anti-competitive tying arrangement in violation of the BHCA.

---

[6]  In ruling on the motion to dismiss the FAC, the Court recognized that Gordon had abandoned her BHCA claim to the extent it was "tied to the extension of credit in the mortgage."  (*Compare* Dkt. No. 68 at 17 *with* SAC ¶¶ 119, 133, 135.)

As an initial matter, to the extent Gordon continues to allege Chase "conditions" the extension of credit on "Chase Insurance acting as an insurance agent for force-placed insurance" (SAC ¶ 135), the BHCA does not apply.  Here, Washington Mutual Bank ("WaMu") was the lender that extended credit to Gordon for her loan (*see* Mortg.), not Chase, and thus Chase could not have placed any conditions on the extension of credit to Gordon.[7]  *Highland Capital, Inc. v. Franklin Nat'l Bank,* 350 F.3d 558, 565 (6th Cir. 2003).  Chase placed flood insurance on Gordon's account in 2011, years after she received her loan from WaMu.  It is not plausible that the extension of credit to Gordon by WaMu was "tied" to Chase's subsequent placement of the ASIC insurance policy approximately eight years later.  *See McClain v. S.C. Nat'l Bank,* 105 F.3d 898, 902 (4th Cir. 1997) (where the borrower is free to purchase insurance on the open market, subsequent lender placement of insurance is not tied to the original loan); *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 395 (6th Cir. 1996) (same), *abrogation recognized on other grounds,* 601 F.3d 505 (6th Cir. 2010).

Second, even if the BHCA anti-tying provision did apply (which it does not), Gordon has not stated a claim for an alleged violation.  To state a claim under the BHCA, Gordon must allege the existence of a "tying arrangement whereby the bank required customers to accept another service or product (the 'tied product') in order to obtain the bank service they desired (the 'tying

---

[7]  On September 25, 2008, the OTS closed WaMu, and named the FDIC as its receiver.  On that same day, Chase and the FDIC entered into a Purchase and Assumption Agreement ("P&A Agreement") under which Chase purchased certain WaMu assets and liabilities.  The P&A Agreement is available on the FDIC website at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf, relevant sections of which are attached as Ex. 1.  The P&A Agreement provides that Chase is not liable for borrower claims relating to WaMu's origination or servicing of any loan prior to September 25, 2008, as these liabilities are retained by the FDIC as receiver.  (*See id.*, Art. 2.1, 2.5.)  The Court may take judicial notice of this public record.  *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1277-78 (11th Cir. 1999) (finding judicial notice of SEC filings proper at motion to dismiss stage); *Brink v. Bradford County Jail,* No. 3:07-CV-65-J12MMH, 2007 WL 402561, at *3 (M.D. Fla. Feb. 1, 2007) (taking judicial notice of government website when deciding motion to dismiss).

product')." *Crain v. Sunbank/Gulf Coast, Inc.,* 95-1156-CIV-T-17C, 1996 WL 172984, at *5 (M.D. Fla. Apr. 11, 1996); *Parsons Steel, Inc.,* 679 F.2d at 246.  Gordon's BHCA claim fails because she has not alleged an anti-competitive tying arrangement.  To make a tying claim under the BHCA, Gordon must allege: "(1) two separate products, a 'tying' or 'desirable' product and a 'tied' or 'undesirable' product; and (2) the buyer was in fact forced to buy the tied product to get the tying product; that is, a 'tying.'" *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1150 (11th Cir. 1993).  The "tied" and "tying" products must be distinct and "[f]or products to be treated as distinct, the tied product must, at a minimum be one that some consumers might wish to purchase separately *without also purchasing the tying product." Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984) (emphasis in original) ("When the tied product has no use other than in conjunction with the tying product, a seller of the tying product can acquire no *additional* market power by selling the two products together."), *abrogated on other grounds, Ill. Tool Works Inc. v. Ind. Ink, Inc.*, 547 U.S. 28 (1984); *McGee v. First Fed. Sav. & Loan Ass'n of Brunswick*, 761 F.2d 647, 648 (11th Cir. 1985) (holding that plaintiff cannot support a claim of an illegal tying arrangement if he failed to show two distinct products).

Here, Gordon has not alleged two separate and distinct products.  She alleges that the "tying product" is "(1) Defendants' service of purchasing insurance on borrowers' behalf, (2) the initial extension of credit, and (3) JPM's continuing extension of credit."  (SAC ¶ 133.)  The "tied" product is "Chase Insurance's 'service' of acting as an insurance agent for force-placed insurance." (*Id.* at ¶ 132.)  Gordon, however, cannot allege that the alleged "tied" product is provided to borrowers as a product separate from the "tying" products.  Gordon has also not alleged that she is a consumer of the "tied" product, nor can she make such an allegation because the consumer of CIA's

12

agent services is Chase, not the borrower.  It is impossible for the *borrower* to purchase agent services for lender-placed insurance separate from lender-placed insurance.  *See McGee*, 761 F.2d at 648 ("There is no legitimate consumer demand by a *borrower* to purchase loan-related appraisal *services separate from the purchase of the loan itself*" when the "appraisal is performed for the benefit of the lending institution.") (emphasis added).  Moreover, Gordon cannot plausibly allege that CIA's unspecified agent services are a distinct "tied" product or service when throughout the rest of the SAC, she alleges that CIA does nothing at all.  (*See, e.g.*, SAC ¶¶ 47, 95-97, 128, 130(a), 131(c).)

Even if Gordon could show that there was a tying arrangement between two distinct products (which she cannot), her BHCA claim would still fail because such an arrangement is neither unusual nor anti-competitive.  (SAC ¶¶ 129-131, 145-146.)  Gordon cannot allege that this is an unusual banking practice because the Mortgage expressly provides for all of the practices she alleges were unusual and Chase's actions are consistent with federal regulations and guidelines.[8] (*See* Dkt. No. 39 at 3-5; *see also supra* n.4.)  Gordon also cannot allege that Chase's practices are anti-competitive.  (SAC ¶¶ 130-131.)  It is undisputable that Gordon had the opportunity to purchase flood insurance from an insurer of her choosing.  (Mortg. § 5.)  Such a practice can hardly be said to be non-competitive.  *See Kenty*, 92 F.3d at 394 (finding that "the Bank was willing to

---

[8] Additionally, courts have determined that a bank's practice of conditioning a loan on measures designed to protect its investment is not unusual.  *See, e.g.*, *Gibson*, 2011 WL 6319401, at *7 ("'A wide range of conditions placed upon debtors in efforts to protect the investment of the creditor bank' are acceptable.") (citations omitted) (finding the practice of lender placing flood insurance common and dismissing plaintiff's BHCA claim); *McClain*, 105 F.3d at 902 ("It is not unusual for a bank to require a borrower to insure the collateral, nor is it unusual for a bank to protect its interest by insuring the collateral at the expense of the borrower when the borrower fails to do so."); *Crain*, 1996 WL 172984, at *5 ("Conditioning the extensions of credit on measures designed to insure that the bank's investment is protected is well within traditional banking practices and is not the kind of unusual or anti-competitive practice that gives rise to a claim under the Bank Holding Company Act."); *New England Co. v. Bank of Gwinnett Cnty.*, 891 F. Supp. 1569, 1576 (N.D. Gal. 1995) ("Courts repeatedly have held that a bank's conduct in conditioning the further extension of credit on the debtor's providing additional security for the loan is not actionable under the BHCA.").

compete with other providers of insurance and thus it is hard to see how this practice can be considered anti-competitive").

Moreover, there cannot be any anti-competitive result on the flood insurance marketplace because the SAC makes clear that Gordon did not want to purchase additional flood insurance from any provider. (*See generally* SAC.) Accordingly, other insurance providers did not lose out when Chase placed the ASIC policy on Gordon's property. *See Gibson*, 2011 WL 6319401, at *8 (finding no adverse impact on competition because Plaintiff "would not on his own purchase the insurance that Chase forced on him."); *Jefferson Parish Hosp. Dist. No. 2*, 466 U.S. at 16 ("[W]hen a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied-product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed."); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1305 (8th Cir. 1997) ("Nor can there be any anti-competitive result in the tied market, the market for the unauthorized insurance coverage, for the simple reason that [Plaintiff] did not want to purchase such coverage from any vendor.").

Because Gordon has not alleged a violation of the BHCA, her claim for declaratory judgment, pursuant to Florida Statute § 626.9551, also fails. Activity by a financial institution is not prohibited by Florida Statute § 626.9551 unless it also "violate[s] § 106 of the Bank Holding Company Amendments of 1970, 12 U.S.C. § 1972, as interpreted by the Board of Governors of the Federal Reserve System." FL. STAT. § 626.9551. Because Gordon cannot allege a violation of either statute, her claim for declaratory judgment should be dismissed. *See Fortran Group Int'l Inc. v. Tenet Hosp. Ltd.*, No. 8:10-cv-01602-T-17, 2010 WL 4366380, at *2 (M.D. Fla. Oct. 28, 2010)

(finding declaratory judgment inappropriate where issues are properly raised in other counts of pleading).

### III.   TILA DOES NOT REQUIRE LENDERS TO DISCLOSE FLOOD INSURANCE REQUIREMENTS.

The Court previously dismissed Gordon's TILA claim for failing "to identify which provision of TILA Plaintiffs are traveling under." (Dkt. No. 68 at 15.) Gordon's amended TILA claim is no better because she fails to link specific TILA provisions to factual allegations that could give rise to any claim. (*See* SAC ¶¶ 160, 163-169.) In several paragraphs, Gordon makes the conclusory allegation that Chase "violated the TILA," (*id.* at ¶¶ 164, 165, 170, 171) and then in a single paragraph alleges that Chase violated *seventeen* different provisions of TILA (*id.* at ¶ 170) without tying any of these provisions to any alleged conduct by Chase violating the provisions. Indeed, most of the statutory provisions cited by Gordon are wholly inapplicable to any claims she could plausibly assert.

The purpose of TILA is to "assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit billing … practices." 15 U.S.C. § 1601(a); 12 C.F.R. § 226.1(b). Gordon alleges that TILA required Chase to issue new disclosures showing the amount of insurance premiums because "[w]hen Chase changed the terms of Plaintiffs' mortgage to allow previously unauthorized kickbacks and insurance amounts in excess of Chase's interest in the property, it created a new debt obligation." (*See id.* at ¶ 163.) Chase, however, did not change any terms because the Mortgage requires Gordon to maintain flood insurance "in the amounts … and for the periods" that Chase requires and allows Chase to purchase insurance from or through an affiliate that may receive a commission. (Mortg. § 5.) Moreover, Gordon's Mortgage specifically states: "[w]hat

Lender requires … can change during the term of the Loan." (*Id.*)  New disclosures may be required "when an existing obligation … is satisfied and replaced by a new obligation undertaken by the same consumer."  12 C.F.R. § 226.20(a).  However, Gordon does not allege that an existing credit obligation was satisfied or extinguished.

Additionally, new disclosures are not required because Chase purchased the flood insurance due to Gordon's failure to maintain adequate insurance on her property.  New disclosures due to subsequent events are not required if they are attributable to a borrower's failure to fulfill a prior commitment to keep property insured, and the creditor then provides the coverage at a charge to the borrower.  *See* 12 C.F.R. § 226.17(e);[9] 12 C.F.R. § 226.20(a)(4) (change in payment schedule or change in collateral required as a result of a consumer's subsequent default or delinquency is not a refinancing or other type of transaction that requires new disclosure);[10] *see also Adams v. GMAC Mortg. Corp.*, No. 94 C 3233, 1994 WL 702639, at *3-*4 (N.D. Ill. Dec. 14, 1994) (finding no new disclosures required and holding it was not a violation of TILA when "the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it"); *Pauley v. Bank One Colorado Corp.*, 205 B.R. 272, 275-76 (D. Colo.

---

[9]   Gordon alleges Chase violated 12 C.F.R. § 226.17(e), which requires new disclosures when subsequent events have rendered the initial disclosures inaccurate.  (SAC ¶ 170.)  However, the Official Commentary to this regulation explains that "[i]naccuracies in disclosures are not violations if attributable to events occurring after the disclosures are made."  Official Staff Commentary on Regulation Z, § 226.17(e)(1).  The Commentary goes on to provide an example that is directly on point to this case:

> [W]hen the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it, *such a change does not make the original disclosures inaccurate* ….

*Id.* (emphasis added).

[10]  The only exception to this is where there is a rate increase or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of the property insurance.  *See* 12 C.F.R. §§ 226.4(d), 226.20(a)(4).  Gordon has not and cannot allege that such an exception would apply here.

1997) (finding new disclosures were not required because insurance purchase by lender resulted from borrower's failure to keep collateral properly insured).

Gordon's other conclusory allegations of TILA violations fail (*see* SAC ¶¶ 161-62, 164-165) because TILA does not require a lender to disclose flood insurance requirements. Nor does TILA require disclosure of insurance premiums or commissions where, as here, the borrower is free to obtain coverage from other providers. *See* 12 C.F.R. § 226.4(d)(2)(i) (excluding insurance premiums from "finance charge" where "coverage may be obtained from a person of the consumer's choice and this fact is disclosed");[11] *see also* Mortg. § 5 ("The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably."). Any commissions that may have been received by Chase affiliates are unrelated to the terms and costs of Gordon's Mortgage because they are not a "finance charge" that must be disclosed under TILA (commissions are paid by the insurer, not the borrower, who only pays the premium).

The only two TILA provisions cited by Gordon that address insurance premiums, and whether insurance premiums must be disclosed as a "finance charge," confirm that Gordon's flood insurance premiums are *not* a "finance charge." (*See* SAC ¶ 170 (citing 12 U.S.C. § 1605(c) and 12 C.F.R. § 226.18).) While several of the provisions cited by Gordon in paragraph 170 relate to disclosure requirements for a "finance charge," insurance premiums are specifically excluded from the definition of "finance charge" where "[t]he insurance coverage may be obtained from a person of the consumer's choice and this fact is disclosed."

---

[11] Premiums for insurance coverage later obtained from or through the creditor may require disclosure but Gordon has not and cannot allege that those premiums were not disclosed. *See* 12 C.F.R. § 226.4(d)(2)(ii).

12 C.F.R. § 226.4(d)(2)(i); *see also* 15 U.S.C. § 1605 (stating that insurance premiums are excluded from finance charge when "the person to whom the credit is extended may choose the person through which the insurance is to be obtained.").  Here, Gordon's flood insurance premiums are not a "finance charge" that must be disclosed under TILA because her Mortgage provides that: "The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably."  (Mortg. § 5.)

Thus, where a borrower was informed she could choose her own insurer and the mortgage authorized a lender to purchase insurance if the borrower failed to maintain it, courts have rejected borrowers' claims that a lender violated TILA by not issuing new credit disclosures in connection with lender placement of insurance.[12]  *See, e.g.*, *Adams*, 1994 WL 702639, at *3-*5 (finding that lender's purchase of hazard insurance fell within an exemption to TILA's disclosure requirements and holding that subsequent events did not trigger TILA's disclosure requirements since the original disclosures never became inaccurate); *Hayes*, 2006 WL 3193743, at *7 (holding that "Lender was not required to disclose the amount of flood insurance premiums under TILA, in accordance with Section 226.4(d)(2)(i)").  Here, Gordon's Mortgage states that she may choose her own flood insurer and she obtained insurance through an insurer of her choosing.  Because her flood insurance premiums are not

---

[12] Although TILA generally does not require disclosure of post-origination charges for premiums or other charges for insurance against loss of or damage to property, at least one court has sustained a TILA claim on a motion to dismiss when the lender placed insurance was not authorized by the mortgage.  *See Wulf v. Bank of America, N.A.*, Civ. Action No. 10-5176, 2011 WL 2550628, at *10-*11 (E.D. Pa. June 27, 2011) (finding TILA claim "skeptical" but holding 12(b)(6) dismissal premature because lender placement was not authorized by mortgage and because it is unclear whether notices disclosed premium terms and costs).  However, Gordon's claim is readily distinguishable from the TILA claim in *Wulf* because her Mortgage clearly and expressly authorized the lender placement of flood insurance.  (*See supra* Section I.)

a "finance charge" that must be disclosed under TILA and because the other TILA provisions she cites are inapplicable, her TILA claim should be dismissed with prejudice.

This Court previously dismissed Gordon's TILA claim for failure to identify an applicable TILA provision to "give Chase fair notice of the basis of [Plaintiffs'] claim and the grounds upon which it rests." (Dkt. No. 68 at 15.) In response, Gordon provides a laundry list of TILA provisions that Chase allegedly "systematically engaged in violat[ing]" though she never states how any of these provisions were actually violated. (*Id.* ¶ 170.) All of Gordon's references to TILA notwithstanding, she is no closer to putting Chase or this Court on notice of what her TILA claim is about. Gordon's scattershot approach to alleging a TILA violation is readily apparent from an examination of the provisions she cites in her complaint. Gordon's citations to TILA are briefly summarized as follows:

| Statute Cited | Reasons Inapplicable |
|---|---|
| 15 U.S.C. §1639(b)(2)(a)<br>12 C.F.R. § 226.31<br>12 C.F.R. § 226.31(c)(1)(i)<br>12 C.F.R. § 226.32<br>15 U.S.C. § 1639 | Relates only to high cost loans under the Home Ownership and Equity Protection Act ("HOEPA"). *See infra* at 20, n.13. |
| 12 C.F.R. § 226.21 | Requires a lender to make refund or credit when balance in excess of $1 is created in connection with a transaction. |
| 15 U.S.C. § 1604 | Relates to authority of the Bureau of Consumer Financial Protection and procedures for it to prescribe and implement new regulations to carry out the purpose of TILA, effective July 21, 2011. |
| 12 C.F.R. § 226.17(c)<br>12 C.F.R. § 226.17<br>12 C.F.R. § 226.17(e)<br>12 C.F.R. § 226.18<br>12 C.F.R. § 226.19<br>15 U.S.C. § 1605<br>15 U.S.C. § 1605(c)<br>15 U.S.C. § 1631<br>15 U.S.C. § 1632<br>15 U.S.C. § 1638 | Relates to obligations and duties for disclosure of "finance charges." Excluded from this definition are insurance premiums where the coverage may be obtained from a person of the consumer's choice and this fact is disclosed. |

None of the provisions Gordon cites (or any other provision of TILA or Regulation Z) requires Chase to disclose its flood insurance requirements.  For example, several of the provisions cited by Gordon are related only to high cost mortgages and Gordon has not and cannot allege that she has a high cost mortgage.[13]  Another provision relates to credit transactions where a borrower has credit balance in excess of $1 and outlines requirements for the lender to refund or credit the balance.  (*See* SAC ¶ 170 (citing 12 C.F.R. § 226.21).)  Gordon, however, fails to allege such a credit exists here or how Chase failed to refund it.  Finally, another provision discusses the authority of the Bureau of Consumer Financial Protection and procedures for it to prescribe and implement new regulations to carry out the purpose of TILA.  (*See id.* (citing 15 U.S.C. § 1604.)  This statute, however, did not even become effective, until July 21, 2011– after any of the alleged violations.  (*See id.* ¶¶ 166-67, 170.)

## IV.    THE JURY TRIAL DEMAND SHOULD BE STRICKEN PURSUANT TO RULE 12(F).

Pursuant to Section 25 of Gordon's Mortgage, Gordon waived any right to a trial by jury in any action arising out of or in any way related to her Mortgage.  The waiver provision is in its own separate paragraph and sufficiently straightforward, understandable, and conspicuous to allow Gordon to be aware of it, read it, and appreciate its meaning.  Since her waiver was made knowingly, voluntarily, and intelligently, her demand for a jury trial should be stricken pursuant to Fed. R. Civ. P. 12(f).  *See Allyn v. W. United Life Assur. Co.*, 347 F.

---

[13]  Gordon alleges violation of 15 U.S.C. §§ 1639, 1639(b)(2)(a) and 12 C.F.R. §§ 226.31, 226.31(c)(1)(i), and 226.32, all of which relate exclusively to high cost loans under HOEPA, but Gordon has not (and cannot) allege she has a high cost loan subject to HOEPA.

Supp. 2d 1246, 1252-53 (M.D. Fla. 2004) (finding plaintiffs had waived right jury trial in mortgage documents and striking demand for jury trial).

For all of the foregoing reasons, the Court should dismiss Counts I, II, IV, V, and VII of the Second Amended Complaint with prejudice. Additionally, the Court should also strike Gordon's jury trial demand.

Dated:   April 2, 2012                    Respectfully submitted,

/s/ LeAnn Pedersen Pope
LeAnn Pedersen Pope (*pro hac vice*)
lpope@burkelaw.com
Stephen R. Meinertzhagen (*pro hac vice*)
smeinertzhagen@burkelaw.com
Shana A. Shifrin (*pro hac vice*)
sshifrin@burkelaw.com
Sara Youn (*pro hac vice*)
syoun@burkelaw.com
**BURKE, WARREN, MACKAY &
SERRITELLA, P.C.**
330 North Wabash Avenue, 22nd Floor
Chicago, IL 60611
Telephone:      (312) 840-7000
Facsimile:      (312) 840-7900

Michele L. Stocker
Florida Bar No. 0044105
stockerm@gtlaw.com
Cory W. Eichhorn
Florida Bar No. 0576761
eichhornc@gtlaw.com
**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
Telephone:      (954) 765-0500
Facsimile:      (954) 765-1477

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that the foregoing document was filed with the Clerk of the Court.  I also

certify that the foregoing document is being served this day on all those on the attached service list via

electronic mail through the Court's CM/ECF system, except where indicated by U.S. Mail.


Dated:  April 2, 2012                    By:  <u>/s/ LeAnn Pedersen Pope                    </u>

## <u>SERVICE LIST</u>

**Alexander P. Owings**
Owings Law Firm
1400 Brookwood Dr.
Little Rock, AR 72202
501/661-9999

**Brent Walker**
Carter Walker, PLLC
2171 W. Main, Suite 200
P.O. Box 628
Cabot, AR 72023
501/605-13446

**Jack Wagoner**
Wagoner Law Firm, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
501/663-5225

**Kevin M. McLaughlin**
Wagner, Vaughan & McLaughlin, PA
601 Bayshore Blvd.
Tampa, FL 33606
813/225-4000
Fax: 813-225-4010
Email: Kevin@wagnerlaw.com

**Steven A. Owings**
Owings Law Firm
Suite D
1400 Brookwood Dr .
Little Rock, AR 72202-
501/661-9999
Fax: 501/661-9999

*Attorneys for Plaintiffs*