UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH GORDON and ANTHONY ARANGO,

       Plaintiffs,

v.                          Case No.  8:11-cv-2001-T-33EAJ

CHASE HOME FINANCE, LLC,
JPMORGAN CHASE BANK, N.A.,

       Defendants.
_____/

## ORDER

This cause is before the Court pursuant to Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Counts I, II, IV, V, and VII of Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim and Motion to Strike Jury Demand (Doc. # 82), which was filed on April 2, 2012.  Plaintiffs filed a Response in Opposition to the Motion (Doc. # 90) on April 19, 2012.  JPMorgan Chase Bank, N.A. filed a Reply (Doc. # 96) on May 4, 2012.  For the reasons that follow, the Court grants the Motion in part and denies the Motion in part.[1]

## I.   Background

Defendant, a residential mortgage lender and loan

---

[1] In the Motion to Dismiss, JPMorgan Chase Bank, N.A. indicates that it is the sole defendant in this action because "JPMorgan Chase Bank, N.A. is the successor by merger to Chase Home Finance LLC effective May 1, 2011." (Doc. # 82 at 2 n. 3).

servicer, requires borrowers to maintain acceptable flood and hazard insurance on residential property securing Defendant's loans. (Doc. # 72 at ¶ 1).  When borrowers do not obtain such insurance, Defendant purchases insurance for the borrower. Id. Such purchase of insurance is known as "force-placement." Id.

Plaintiffs Ruth Gordon and Anthony Arango are residents of Hillsborough County, Florida and own their home in Tampa, Florida. Id. at ¶ 9.  Plaintiffs refinanced their home with a mortgage from Washington Mutual Bank in 2003, and the loan was later assigned to JPMorgan Chase Bank, N.A., with servicing delegated to Chase Home Finance, LLC. Id.  The Mortgage is attached to the Second Amended Complaint. (Doc. # 72-1).

The mortgage contains detailed provisions describing Defendant's flood insurance requirements and the manner in which Defendant may force-place insurance policies:

**Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts . . . and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . .  If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  **Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration**

2

**for such purchase.**  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. **Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.**  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

(Doc. # 72-1 at 7, ¶ 5)(emphasis added).

In 2011, when Plaintiffs' loan balance was $108,018.48, "Chase Home Finance, LLC decided they needed $250,000 in flood insurance coverage." (Doc. # 72 at ¶ 10). Plaintiffs bought the $250,000 flood insurance policy after Chase Home Finance, LLC, or its successor, JPMorgan Chase Bank, N.A., force-placed them into a high-premium policy with American Security Insurance Company ("ASIC") in June 2011. Id.

Plaintiffs allege that Defendant has an "exploitative and self-dealing" arrangement with ASIC:

> Chase purchases all of its force-placed insurance from . . . ASIC, at a cost two to twenty times the market rate for such insurance.  Under written agreements with ASIC, ASIC is the *exclusive* provider of force-placed insurance for Chase. Chase thus agrees not to "shop around" to obtain a fairly priced policy when force-placing borrowers with insurance, and to use only ASIC.  Under these same written agreements, ASIC contractually agrees to pay a Chase affiliate (Chase Insurance Agency) a kickback equal to ten to twenty percent of the "cost" of the policy.

Id. at ¶ 2 (emphasis in original).

3

Plaintiffs further allege that Defendant wrongfully requires borrowers to carry flood and hazard insurance far in excess of that necessary to protect Defendant's interests because Defendant requires borrowers to carry insurance equal to the replacement value of the collateral "even when the amount of money owed to Chase on the debt is far below the replacement value of the collateral." Id. at ¶ 6. Plaintiffs further allege that "[f]ederal law does not require flood insurance in excess of the outstanding balance owed to the lender, but Chase sends deceptive and false notices to borrowers that mislead them into believing that federal law requires more than loan balance coverage." Id. at ¶ 7.

Plaintiffs initiated this action against Defendant on September 1, 2011, and filed the Second Amended Complaint (Doc. # 72) on March 16, 2012, asserting the following counts against Defendant: (I) breach of contract; (II) breach of the implied covenant of good faith and fair dealing; (III) breach of fiduciary duty; (IV) declaratory judgment; (V) violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972, et seq.; (VI) unconscionability; and (VII) violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq.  Plaintiffs seek $5 million in damages, injunctive relief, a jury trial, and an award of attorneys' fees.

Defendant filed its Motion to Dismiss, seeking dismissal of counts I, II, IV, V, and VII of the Second Amended Complaint as well as an order striking Plaintiffs' jury demand, on April 2, 2012. (Doc. # 82). On June 29, 2012, the parties filed a Joint Motion to Stay the Case (Doc. # 103). The Court granted the Motion and the case was stayed until December 20, 2012. (Doc. ## 104, 119). The stay having been lifted, the Court now considers the Motion.

## II.  <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

As a threshold matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[2] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). The Court has considered the Mortgage attached to the Second Amended Complaint and has not considered any other documents.

III. **Analysis**

    A. **Breach of Contract**

---

[2] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion . . .." Fed. R. Civ. P. 12(c).

In count I, Plaintiffs allege that Defendant breached Section 5 of the Mortgage when it paid "its sister corporation, Chase Insurance Agency . . . a kickback" because the Mortgage "does not authorize Chase to give borrowers' money away to affiliates that do nothing to earn it." (Doc. # 72 at ¶ 3; Doc. # 90 at 4). More specifically, Plaintiffs contend that:

> Chase purchases all force-placed insurance from ASIC, and is contractually obligated to do so. Chase also does not purchase force-place insurance "through" [Chase Insurance Agency]. Chase purchases force-placed insurance directly from ASIC. [Chase Insurance Agency] has no role in the purchase of force-placed flood insurance and performs no services during the force-placement process. In reality, [Chase Insurance Agency] is merely a conduit for payment of kickbacks. Under the express terms of the mortgage, Chase has no authority to pay consideration to [Chase Insurance Agency] because [Chase] does not purchase insurance "from or through" [Chase Insurance Agency].

(Doc. # 90 at 4). Plaintiffs explain, "Kickbacks are not 'costs.' Chase breached the mortgage contract by charging Plaintiffs for the 'cost' of force-placed flood insurance when a portion of this 'cost' was returned to a Chase affiliate pursuant to secret agreements between Chase, ASIC, and Chase Insurance Agency." Id. at ¶ 95.

To state a breach of contract claim, Plaintiffs must allege, "(1) a valid contract; (2) a material breach; and (3)

damages." <u>J.J. Gumberg Co. v. Janis Servs., Inc.</u>, 847 So.2d 1048, 1049 (Fla. 4th DCA 2003). "As long established by the Florida Supreme Court, '[w]hat will constitute breach of contract is a matter of law to be determined by the court. Whether or not that has occurred which would constitute a breach of contract is a matter of fact to be determined by a jury.'" <u>Action Nissan, Inc. v. Hyundai Motor Am.</u>, 617 F. Supp. 2d 1177, 1195 (M.D. Fla. 2008)(citing <u>Winter Garden Citrus Growers' Ass'n v. Willits</u>, 151 So. 509, 511 (1933)).

Defendant asserts that Plaintiffs' breach of contract claim must fail because Plaintiffs "cannot identify any specific contract term that was allegedly breached." (Doc. # at 82 at 2). Defendant also argues that the Mortgage authorizes the complained of transactions. At this preliminary juncture, however, the Court determines that Plaintiffs have alleged the required elements for stating a breach of contract claim and have likewise alleged supporting facts sufficient to raise Plaintiffs' right to relief beyond the speculative level. Plaintiffs have alleged that Defendants breached section 5 of the Mortgage and have siphoned off unauthorized costs in the form of kickbacks to be paid to its sister company, who does nothing to earn such costs. The Court accepts these allegations as true at this

stage of the action.  Accordingly, the Court denies the Motion to Dismiss as to count I, for breach of contract.

**B.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

In count II, Plaintiffs assert that Defendant violated the implied duty of good faith and fair dealing.  The duty of good faith and fair dealing is implied in every contract in the state of Florida.  Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097 (Fla. 1st DCA 1999)("It is axiomatic that every contract includes not only its written provisions, but also the terms and matters which, though not actually expressed, are implied by law, and these are as binding as the terms which are actually written or spoken. . . . One of the implied contract terms . . . is the implied covenant of good faith, fair dealing, and commercial reasonableness.")(internal citations omitted).

A claimant asserting a cause of action for breach of the implied covenant of good faith and fair dealing must allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment, or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party, thereby depriving that party of the benefits of the agreement.

9

Mount Sinai Med. Ctr. of Greater Miami v. Hendrick, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004).

Further, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." Cox, 732 So.2d at 1097-1098.

The Eleventh Circuit has cautioned that "a cause of action for breach of the implied covenant cannot be maintained in derogation of the express terms of the underlying contract." Burger King Corp. v. Weaver, 169 F.3d 1310, 1318 (11th Cir. 1999).

Plaintiffs allege that Defendant acted capriciously and in bad faith in exercising its discretion under Plaintiffs' Mortgages by "charging two to twenty times the market rate for flood insurance." (Doc. # 90 at 7). Plaintiffs also allege, "Pursuant to undisclosed contracts, a portion of the exorbitant premiums was returned to Chase Insurance Agency, which did nothing to earn them." Id. Moreover, Plaintiffs contend that "No reasonable borrower would expect that the 'cost' of force-placed insurance would be two to twenty times more expensive due to Chase's self-dealing and profiteering

[and n]o reasonable borrower would expect to pay an unearned kickback to Chase's affiliate for force-placed insurance." <u>Id.</u> at 7-8.

Defendant, on the other hand, asserts that the breach of the implied covenant of good faith and fair dealing count should be dismissed because Plaintiffs failed to identify a specific contractual provision that Defendant breached.  The Court rejects this argument, finding that Plaintiffs have adequately alleged that Defendant breached section 5 of the Mortgage.  In addition, the Court finds that Plaintiffs have articulated detailed facts supporting a breach of the implied covenant of good faith and fair dealing claim.  Accordingly, the Court denies the Motion to Dismiss as to count II.

### C.   **Bank Holding Company Act and Florida Statute §  626.9551**

In count IV, Plaintiffs seek a declaration that Defendant violated the terms of the Bank Holding Company Act, 12 U.S.C. § 1972, as well as Florida Statute § 626.9551.  In count V, Plaintiffs seek damages for an alleged violation of the anti-tying provisions of the Bank Holding Company Act.

The Bank Holding Company Act prohibits a bank from extending credit on the condition that the customer obtain some additional credit, property, or service from such bank, the holding company of such bank, or a subsidiary of the

holding company of such bank. 12 U.S.C. § 1972(1)(B).

Florida Statute § 626.9551(4) similarly provides:

> No person may make an extension of credit or the
> sale of any product or service that is the
> equivalent to an extension of credit or lease or
> sale of property of any kind, or furnish any
> services or fix or vary the consideration for any
> of the foregoing, on the condition or requirement
> that the customer obtain insurance from that
> person, or a subsidiary or affiliate of that
> person, or a particular insurer, agent or broker;
> however, this subsection does not prohibit any
> person from engaging in any activity that if done
> by a financial institution would not violate s. 106
> of the Bank Holding Company Act Amendments of 1970,
> 12 U.S.C. s. 1972, as interpreted by the Board of
> Governors of the Federal Reserve System.

Fla. Stat. § 626.9551(4).

Plaintiffs contend that the following sentence in the

Mortgage violates the Bank Holding Company Act and Florida

Statute § 626.9551(4): Lender "may purchase such insurance

from or through any company acceptable to Lender including,

without limitation, an affiliate of Lender, and Borrower

acknowledges and agrees that Lender's affiliate may receive

consideration for such purchase."  In the Second Amended

Complaint, Plaintiffs indicate, "The provision quoted above

violates both the Bank Holding Company Act and Fla. Stat. §

626.9551, because the condition that the lender be allowed to

force-place flood insurance by or through its holding

company's subsidiary, and charge the borrower for it, is a

12

condition on the extension of credit." (Doc. # 72 at ¶ 119).
Plaintiffs request a declaratory judgment that such provision
in their Mortgage is void as against public policy.

Count V of the Second Amended Complaint seeks damages for
Defendant's alleged violations of the aforementioned anti-
tying provisions of the Bank Holding Company Act.  To state
such a claim, Plaintiffs must show that there was a condition
placed on the extension of credit or provision of any bank
service and that such condition was: (1) an unusual banking
practice; (2) an anti-competitive tying arrangement; and (3)
a practice that benefits the bank.  See 12 U.S.C. § 1972(1);
Parsons Steel, Inc. v. First Ala. Bank of Montgomery, 679 F.2d
242, 245 (11th Cir. 1982).

Defendant seeks dismissal of counts IV and V arguing that
the Bank Holding Company Act and corresponding Florida Statute
do not apply to Defendant under the circumstances alleged and,
even if Defendant is constrained by the relevant Act and
Florida Statute, that Plaintiffs have failed to allege any
violation.  The Court rejects Defendant's argument that the
Bank Holding Company Act and the Florida Statute do not apply
to Defendant under the facts alleged in the Second Amended
Complaint.  The Court recognizes that Defendant is not the
loan originator and therefore could not have placed an

improper condition upon the initial extension of credit. However, the relevant Florida statute and the Bank Holding Company Act both apply to Defendant to the extent that Defendant is the loan servicer.

As explained in <u>Integon Life Ins. Corp. v. Browning</u>, 989 F.2d 1143, 1150 (11th Cir. 1993), "under anti-trust law, a tying arrangement is an agreement by a party to sell one product (the 'tying' product) but only on the condition that the buyer also purchase a different (or 'tied') product." To state an anti-tying violation under the Bank Holding Company Act, a plaintiff must allege: "(1) two separate products, a 'tying' or 'desirable' product and a 'tied' or 'undesirable' product; and (2) the buyer was in fact forced to buy the tied product to get the tying product; that is, a 'tying.'" <u>Id.</u> In addition, as articulated in <u>Parsons Steel, Inc.</u>, 679 F.2d at 245, the complained of bank practice must also be an "unusual banking practice . . . shown to be an anti-competitive tying arrangement which benefits the bank."

In the Second Amended Complaint, Plaintiffs contend: "The 'tied product' . . . is Chase Insurance's 'service' of acting as an insurance agent for force-placed insurance. The 'tying product' is (1) Defendants' service of purchasing insurance on borrowers' behalf, (2) the initial extension of credit, and

14

(3) [Defendant's] continuing extension of credit. [Defendant] ties the procurement of insurance on borrowers' behalf to Chase Insurance's 'service' as alleged above." (Doc. # 72 at ¶¶ 132-34).  In addition, Plaintiffs allege that Defendant's conduct is unusual, anticompetitive, and benefits the bank. Id. at ¶¶ 123-131.

The Court acknowledges the line of cases that Defendant has supplied, which indicate that it is not an unusual, anti-competitive bank practice to condition a loan on measures designed to protect the bank's investment, including the requirement that the borrowers insure the property.  See Gibson v. Chase Home Fin., LLC, No. 8:11-cv-1302-T-23TBM, 2011 WL 6319401, at * 7 (M.D. Fla. Dec. 16, 2011)("A wide measure of conditions placed upon debtors in efforts to protect the investment of the creditor bank are acceptable."); McClain v. S.C. Nat'l Bank, 105 F.3d 898, 902 (4th Cir. 1997) ("It is not unusual for a bank to require a borrower to insure the collateral, nor is it unusual for a bank to protect its interest by insuring the collateral at the expense of the borrower when the borrower fails to do so.").  However, this is not a simple case of a bank requiring property insurance and Plaintiffs' Bank Holding Company Act claims are not predicated upon Defendant's insurance coverage requirements. Rather, Plaintiffs focus on an elaborate, alleged kickback

15

scheme implicated when the borrower fails to secure adequate flood insurance.  In addition, Plaintiffs point to language in the Mortgage mandating that borrowers must agree to pay commissions to Chase Insurance Agency for unidentified services in connection with the force-placement of insurance from ASIC.

Plaintiffs have alleged specific conduct, which, if proven, could substantiate Plaintiffs' requests for declaratory relief and damages pursuant to the Bank Holding Company Act and corresponding Florida statute.  Thus, the Court denies the Motion to Dismiss as to counts IV and V.

      **D.**   **Truth in Lending Act**

In count VII, Plaintiffs assert that Defendant violated the Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"). The declared purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998)(citing 15 U.S.C. § 1601(a)).

TILA "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights . . . and it

16

prescribes civil liability for any creditor who fails to do so." Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 54 (2004). The Court is required to construe TILA claims "liberally in favor of the consumer." Bragg v. Bill Heard Chevrolet, 374 F.3d 1060, 1065 (11th Cir. 2004).

Plaintiffs assert that Defendant violated TILA when it (1) failed to clearly, fully, and accurately disclose its flood insurance requirements in its mortgages; (2) misrepresented in its flood insurance notices that Plaintiffs must maintain flood insurance in amounts greater than federal law required or Plaintiffs' Mortgage authorized; (3) failed to correct the disclosures contained in Plaintiffs' Mortgage when the prior disclosures clearly differ from Defendant's requirements; and (4) failed to disclose the kickback Chase Insurance Agency received for the purchase of force-placed flood insurance. (Doc. # 72 at ¶¶ 157-73).

Defendant correctly asserts that the disclosure provisions of TILA do not apply to "premiums for insurance against loss or damage to property" when the "insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed." 12 C.F.R. § 226.4(d)(2). Although Plaintiffs cast their TILA claims in a variety of divergent directions, at bottom, these claims radiate from Defendant's flood insurance requirements.

17

Plaintiffs have directed the Court's attention to an array of non-binding cases concerning the application of TILA to force-placed insurance policies.[3]  However, the Court determines that Plaintiffs' TILA claim must fail in light of TILA's exception for insurance premiums noted above and stated in 12 C.F.R. § 226.4(d)(2).  It cannot be contested that Plaintiffs were first given the option of obtaining flood insurance before Defendant secured the complained of coverage at Plaintiffs' expense.

In addition, to the extent Plaintiffs allege that Defendant was required to make new TILA disclosures after it secured the insurance in question, the Court finds such argument unavailing.  While Plaintiffs are generally correct in asserting that new TILA disclosures are required "when an existing obligation . . . is satisfied and replaced by a new obligation undertaken by the same consumer;" 12 C.F.R. § 226.20(a), new disclosures are not required when the new obligation is attributable to the borrower's failure to

---

[3] See, e.g., Wulf v. Bank of Am., 798 F. Supp. 2d 586, 598-99 (E.D. Pa. 2011)("[S]everal courts have concluded that a charge for insurance not authorized by the loan documentation constitutes a finance charge and requires [TILA] disclosure.").  However, Wulf is readily distinguishable because, in Wulf, the mortgage did not explain that the lender could force-place insurance.  In the present case, the Mortgage authorizes Defendant's forced-placement of flood insurance.

18

fulfill a prior commitment to maintain insurance on the property and the lender provides insurance coverage at the borrower's expense. <u>See</u> 12 C.F.R. § 226.17(3); 12 C.F.R. § 226.20(a)(4)(change in payment schedule or change in collateral required as a result of a borrower's subsequent default or delinquency is not a refinancing or other type of transaction that requires a new disclosure); <u>Adams v. GMAC Mortg. Co.</u>, No. 94 C 3233, 1994 WL 702639, at *3-4 (N.D. Ill. Dec. 14, 1994)(TILA disclosure requirements not implicated when "the consumer fails to fulfill a prior commitment to keep the collateral insured and the creditor then provides the coverage and charges the consumer for it.").

Thus, Plaintiffs' TILA claim is subject to dismissal.

### E. Motion to Strike Jury Demand

Plaintiffs have requested a jury trial. Defendant seeks an order striking Plaintiffs' jury demand based on section 25 of the Mortgage, which states: **"Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note." (Doc. # 72-1 at 16, ¶ 25).

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty

19

dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII.   The Supreme Court noted in <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 564-65 (1990), "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."   Nevertheless, it is beyond dispute that a party may waive his right to a jury trial so long as the waiver is knowing and voluntary. <u>Bakrac, Inc. v. Villager Franchise Sys., Inc.</u>, 164 F. App'x 820, 823 (11th Cir. 2006).   In addition, absent a showing of fraud or mental incompetence, a party who signs a contract cannot avoid his obligation under the contract simply by showing that he did not read what he signed. <u>Coleman v. Prudential Bache Sec., Inc.</u>, 802 F.2d 1350, 1352 (11th Cir. 1986).

Plaintiffs argue that this Court should not enforce the jury trial waiver because "Plaintiffs did not knowingly and voluntarily waive their constitutional right to a jury trial . . . and Plaintiffs had no opportunity to negotiate the jury waiver provision [because] they were in a far weaker bargaining position than their lender." (Doc. # 90 at 20). Defendant, on the other hand, seeks an order enforcing the waiver and striking Plaintiffs' jury demand because the waiver

provision "is in its own separate paragraph and sufficiently straightforward, understandable, and conspicuous to allow [Plaintiffs] to be aware of it, read it, and appreciate its meaning." (Doc. # 82 at 20).

In determining whether to strike Plaintiffs' jury demand, the Court will address the following factors: (1) the conspicuousness of the waiver provision; (2) the parties' relative bargaining power; (3) the sophistication of the party challenging the waiver; and (4) whether the terms of the contract were negotiable. Bakrac, Inc., 164 F. App'x at 824. No single factor is conclusive, and "[i]n making a determination, the Court is not bound by the number of factors that have been satisfied." Hancock v. Deutsche Bank, No. 8:09-cv-1724-T-27EAJ, 2006 U.S. Dist. LEXIS 79805, at *4 (M.D. Fla. Oct. 23, 2006). Rather, the Court asks whether, "in light of all the circumstances, the Court finds the waiver to be unconscionable, contrary to public policy, or simply unfair." Allyn v. W. United Life Assur. Co., 374 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004).

First, the Court determines that the jury trial waiver is conspicuous. It is contained in its own separate paragraph. It is located on the last page of the Mortgage and directly precedes Plaintiffs' signatures. The jury trial waiver is in a typeface and style consistent with the rest of the document

and is not obscured by other language.  It is not hidden in a footnote.  In addition, the jury trial waiver is written in clear and unambiguous language, rather than in perplexing "legalese."  See Allyn, 347 F. Supp. 2d at 1252 (finding waiver provision to be conspicuous when it was located in the last numbered paragraph near the end of the document and contained straightforward, understandable language).

As for the sophistication of Plaintiffs and their relative bargaining power, it may be true that, when compared to Defendant, the Plaintiffs were "unsophisticated;" however, the Plaintiffs were under no obligation to seek financing from Defendant.  As stated in Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1295 (M.D. Fla. 2010), "[A] term in a contract waiving a party's right to a jury trial is not unenforceable even though one party to a contract is a large corporation and the other party is simply an individual who is in need of the corporation's services."  See also Milsap v. Cornerstone Residential Mgmt., Inc., No. 06-cv-60033, 2007 U.S. Dist. LEXIS 22252 (S.D. Fla. Mar. 27, 2007)(finding that a single mother with two small children in need of housing could have walked away from an apartment lease containing a jury trial waiver if she found the lease terms unacceptable).

Furthermore, to the extent that Plaintiffs assert that they were unable to negotiate, the Court finds that no

circumstances prevented Plaintiffs from walking away from the loan they were offered if they did not want to waive their right to a jury trial.   Nothing in the pleadings leads the Court to believe that the balance of the bargaining power tipped heavily against Plaintiffs.   Likewise, the Second Amended Complaint's allegations do not demonstrate why Plaintiffs did not simply walk away from the deal--a strong bargaining chip--if they found the deal, including the jury trial waiver, to be unacceptable.   Plaintiffs did not walk away from the transaction; rather, they signed the Mortgage and bound themselves to all of the terms contained therein.

Courts routinely and regularly enforce jury trial waivers found in loan agreements. See, e.g., Anderson v. Apex Fin. Group, Inc., No. 8:08-cv-949-T-30MSS, 2008 U.S. Dist. LEXIS 111449 (M.D. Fla. July 16, 2008)(enforcing a conspicuous jury trial waiver contained in a mortgage).   This case is no exception. The Court has not been supplied with evidence tending to show that the waiver was unconscionable, contrary to public policy, or simply unfair.   Accordingly and upon due consideration of the individual factors noted above as well as the totality of the circumstances, the Court strikes the jury demand in this case.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Counts I, II, IV, V, and VII of Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim and Motion to Strike Jury Demand (Doc. # 82) is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>22nd</u> day of January, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record