UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH GORDON and ANTHONY ARANGO,
individually and on behalf of all
others similarly situated,

      Plaintiffs,

v.                    Case No.  8:11-cv-2001-T-33EAJ

CHASE HOME FINANCE, LLC, and
JPMORGAN CHASE BANK, NA.,

      Defendants.
_____/

**<u>ORDER</u>**

    This cause comes before the Court pursuant to Plaintiffs'
sealed Motion for Class Certification (Doc. # 73), filed on
March 16, 2012.  Defendant filed a Response in Opposition to
the Motion on April 17, 2012. (Doc. # 87).[1]  Plaintiffs filed
a Reply Memorandum, with leave of Court, on May 10, 2012.
(Doc. # 99).  Also before the Court is Plaintiffs' Motion to
Preserve this Court's Jurisdiction Over Florida Class Members
Pursuant to the First-Filed Rule and All Writs Act (Doc. #
120), which was filed on December 21, 2012.  Defendant filed
a Response in Opposition to the Motion (Doc. # 125) on January
7, 2013.  For the reasons that follow, the Court denies the

_____

    [1] In prior submissions, JPMorgan Chase Bank, N.A. has
indicated that it is the sole defendant in this action because
"JPMorgan Chase Bank, N.A. is the successor by merger to Chase
Home Finance LLC effective May 1, 2011." (Doc. # 82 at 2 n.
3).

Motion for Class Certification and denies as moot Plaintiffs' Motion to Preserve this Court's Jurisdiction Over Florida Class Members Pursuant to the First-Filed Rule and All Writs Act. (Doc. # 120).

## I.   <u>Background</u>

Defendant, a residential mortgage lender and loan servicer, requires borrowers to maintain acceptable flood and hazard insurance on residential property securing Defendant's loans. (Doc. # 72 at ¶ 1).  When borrowers do not obtain such insurance, Defendant purchases insurance for the borrower. <u>Id.</u> Such purchase of insurance is known as "force-placement." <u>Id.</u>

Plaintiffs Ruth Gordon and Anthony Arango are residents of Hillsborough County, Florida and own their home in Tampa, Florida. <u>Id.</u> at ¶ 9.  Plaintiffs refinanced their home with a mortgage from Washington Mutual Bank in 2003, and the loan was later assigned to JPMorgan Chase Bank, N.A., with servicing delegated to Chase Home Finance, LLC. <u>Id.</u>  The Mortgage is attached to the Second Amended Complaint. (Doc. # 72-1).

The Mortgage contains detailed provisions describing Defendant's flood insurance requirements and the manner in which Defendant may force-place insurance policies:

**Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire . . . and any other hazards including, but not

limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts . . . and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . .  If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  **Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase.**  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. **Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.** Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

(Doc. # 72-1 at 7, ¶ 5)(emphasis added).

In 2011, when Plaintiffs' loan balance was $108,018.48, "Chase Home Finance, LLC decided they needed $250,000 in flood insurance coverage." (Doc. # 72 at ¶ 10). Plaintiffs bought the $250,000 flood insurance policy after Chase Home Finance, LLC, or its successor, JPMorgan Chase Bank, N.A., force-placed them into a high-premium policy with American Security Insurance Company ("ASIC") in June 2011. Id.

Plaintiffs allege that Defendant has an "exploitative and self-dealing" arrangement with ASIC:

Chase purchases all of its force-placed insurance from . . . ASIC, at a cost two to twenty times the

> market rate for such insurance. Under written agreements with ASIC, ASIC is the *exclusive* provider of force-placed insurance for Chase. Chase thus agrees not to "shop around" to obtain a fairly priced policy when force-placing borrowers with insurance, and to use only ASIC. Under these same written agreements, ASIC contractually agrees to pay a Chase affiliate (Chase Insurance Agency) a kickback equal to ten to twenty percent of the "cost" of the policy.

Id. at ¶ 2 (emphasis in original).

Plaintiffs further allege that Defendant wrongfully requires borrowers to carry flood and hazard insurance far in excess of that necessary to protect Defendant's interests because Defendant requires borrowers to carry insurance equal to the replacement value of the collateral "even when the amount of money owed to Chase on the debt is far below the replacement value of the collateral." Id. at ¶ 6. Plaintiffs further allege that "[f]ederal law does not require flood insurance in excess of the outstanding balance owed to the lender, but Chase sends deceptive and false notices to borrowers that mislead them into believing that federal law requires more than loan balance coverage." Id. at ¶ 7.

Plaintiffs initiated this action against Defendant on September 1, 2011, and filed the Second Amended Complaint (Doc. # 72) on March 16, 2012, asserting the following counts against Defendant: (I) breach of contract; (II) breach of the

implied covenant of good faith and fair dealing; (III) breach of fiduciary duty; (IV) declaratory judgment; (V) violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972, et seq.; (VI) unconscionability; and (VII) violation of the Truth in Lending Act, 15 U.S.C. § 1601, et seq. On June 29, 2012, the parties filed a Joint Motion to Stay the Case (Doc. # 103). The Court granted the Motion and the case was stayed until December 20, 2012. (Doc. ## 104, 119). On December 21, 2012, Plaintiffs filed their Motion to Preserve this Court's Jurisdiction Over Florida Class Members Pursuant to the First-Filed Rule and All Writs Act. (Doc. # 120). On January 23, 2013, the Court dismissed Plaintiffs' Truth in Lending Act claim pursuant to Defendant's Motion to Dismiss. (Doc. ## 82, 128). At this juncture, the Court will consider Plaintiffs' request to certify the following two nation-wide classes:

> **Class 1:** All United States residents with mortgages owned or serviced by JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC who, during the applicable statute of limitations, were charged for a force-placed flood insurance policy, and who, at any time, paid, or who still owe, premiums for such force-placed policies.
> **Class 2:** All United States residents with mortgages owned or serviced by JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC who, during the applicable statute of limitations, increased their flood insurance coverage to an amount exceeding the unpaid principal balance of their mortgage loan

> after receiving notice from JPMorgan Chase Bank,
> N.A. or Chase Home Finance, LLC stating that their
> existing flood insurance coverage was insufficient.

(Doc. # 72 at ¶ 79).  The parties refer to Class 1 as the "Force-Placed Class" and Class 2 as the "Excess Insurance Class."  The Court will do the same.

## II.  <u>Legal Standard</u>

As explained in <u>Valley Drug Co. v. Geneva Pharmaceuticals, Inc.</u>, 350 F.3d 1181, 1187 (11th Cir. 2003), "Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." Under Rule 23(a), a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly.  The burden of proof to establish the propriety of class certification rests with the advocate of the class, and failure to establish any one of the four Rule 23(a) factors and at least one of the alternative requirements of Rule 23(b) precludes class certification.  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613-14 (1997).

Plaintiffs seek certification under Rules 23(b)(2) and (3).  Subsection (2) is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Subsection (3) is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

This Court must conduct a "rigorous analysis" of the Rule 23 prerequisites before certifying a class. <u>Gen. Tel. Co. of the S.W. v. Falcon</u>, 457 U.S. 147, 161 (1982).  <u>See also Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 n.12 (1978)("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action . . . . The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.")(internal citations omitted).

III. <u>**Analysis**</u>

   A.   <u>**Numerosity**</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that less than twenty-one plaintiffs is inadequate, and more than 40 class plaintiffs is generally enough to satisfy the rule. See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

Plaintiffs assert that 33,000 individuals fall within the Force-Placed Class and 305,000 individuals fall within the Excess Insurance Class. Defendant does not appear to contest that the numerosity prong of the analysis is satisfied and, based on Plaintiffs' estimates, the Court concludes that Plaintiffs have met their burden of demonstrating numerosity.

**B.   Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." In Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2001), the Court clarified the commonality requirement for class certification by specifically rejecting the use of generalized questions to establish commonality. Noting that "any competently crafted class complaint literally raises common questions," the Court focused the required discussion as follows:

-8-

> What matters to class certification is not the raising of common questions – even in droves- but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Id. at 2551 (internal citation omitted).  The Court explained that the "common contention" underpinning a finding of Rule 23(a) commonality "must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Plaintiffs enumerate a host of alleged "common" questions relative to the two proposed classes in the Second Amended Complaint.  For instance, as to the Force-Placed Class, Plaintiffs propose the following "common questions," among others: "Whether Chase breached Class Members' mortgage contracts and the implied covenant of good faith and fair dealing by charging Chase Members for the 'costs' of force-placed flood insurance when a portion of those 'costs' were returned to a Chase affiliate pursuant to a secret agreement;" "Whether Chase breached its fiduciary duty to Plaintiffs and Class members by withdrawing funds from their escrow accounts for the purported 'cost' of flood insurance when Chase knew that a portion of those funds would be paid to Chase's

affiliate as a kickback;" "Whether Defendants breached the mortgage contracts, the implied covenant of good faith and fair dealing, and acted unconscionably toward Plaintiffs and Class Members by failing to seek competitive bids on the open market before purchasing force-placed flood insurance for Class Members;" and "Whether Chase's business practices for force-placed insurance are unconscionable as Chase applies them; specifically, whether the mortgage provisions relating to force-placed flood insurance are procedurally and substantively unconscionable to the extent Chase claims they authorize Defendants to derive hidden financial benefits by force-placing high-cost insurance policies when a portion of the 'costs' of those policies are returned to a Chase affiliate." (Doc. # 72 at ¶ 84).

Likewise, as to the Excess Insurance Class, Plaintiffs delineate the following common questions, among others, in an effort to demonstrate the required element of commonality: "Whether Chase breached Class Members' mortgage contracts and the implied covenant of good faith and fair dealing by requiring flood insurance in amounts greater than the amount authorized by Class Members' mortgages, which is the amount necessary to 'cover Lender . . . against any risk;'" and "Whether Chase's uniform policy of applying its flood

insurance policy to all borrowers and providing borrowers no opportunity to prove that their coverage is sufficient or negotiate with Chase is unconscionable." Id.

Upon due consideration, the Court determines that this suit is not amenable to resolution on a classwide basis. Plaintiffs fall short of satisfying the required element of commonality as Plaintiffs have not demonstrated the existence of a common contract signed by all members of the proposed classes. Such was the case in Vega v. T-Mobile USA, Inc., 564 F.3d 1256 (11th Cir. 2009). There, the plaintiff salesperson sought and was granted class certification as to an unpaid wages and unjust enrichment action against his former employer. Id. at 1263-64. The plaintiff challenged the defendant employer's policy allowing for commission "charge backs" when a salesperson's customer was deemed to have deactivated his account. Id. at 1261. The Eleventh Circuit vacated the certification order and remanded with the instruction that the employee's claims proceed individually after finding that the plaintiff failed to demonstrate that each salesperson employee signed a common contract.[2] Id. at

---

[2] The Eleventh Circuit likewise found that Vega failed to satisfy the predominance prong of Rule 23(b)(3): "Lacking commonality, the allegations in Vega's complaint obviously
(continued...)

1260.   The Eleventh Circuit emphasized: "Most importantly, Vega has not shown commonality under a breach of contract theory because he has not alleged in his complaint the existence of a common contract under which T-Mobile employed all class members." Id. at 1272.  Without a common contract, the "elements of each class member's claim" could not be proved by "identical evidence" but rather were dependent upon "individualized facts and circumstances" that differed for each class member. Id.  The court also noted:

> Without the existence of a common contract, of course, there can also be no commonality with respect to whether T-Mobile's conduct relating to commission charge backs, even if undertaken pursuant to a uniform policy, constituted a breach of every class member's particular employment contract, or whether each class member suffered cognizable damages as a result.

Id.

Plaintiffs, whose commonality arguments are based on allegations of Defendant's "uniform" policies, are in the same boat.  As argued by Defendant, "In the absence of a common contract, there can be no commonality as to whether flood insurance in excess of the outstanding loan balance or the payment of commissions to a Chase affiliate constituted a

---

[2](...continued)
must fail the predominance test as well." Vega, 564 F.3d at 1272.

breach of every class member's particular mortgage." (Doc. # 87 at 29). Plaintiffs, with their laundry list of "common" questions do not identify common questions that "generate common *answers* apt to drive the resolution of the litigation." Wal-Mart Stores, 131 S. Ct. at 2551. Thus, class certification is not warranted due to a lack of commonality.

Although the Court has focused its commonality analysis on the absence of a common contract to demonstrate that Plaintiffs' contract-based claims are not suitable for classwide disposition, the Court similarly finds that Plaintiffs cannot satisfy the commonality analysis as to the remaining claims (for breach of fiduciary duty, unconscionability, and violation of the Bank Holding Company Act). Each of these claims present highly individualized inquiries, the answers to which are not apt to drive the resolution of the litigation.

In addition, even if the requirements of Rule 23(a) had been satisfied, including the requirements of typicality and adequacy of representation, evaluation of the more stringent requirements of Rule 23(b) underscores that class certification is inappropriate in this case.

   C.   **Injunctive and Declaratory Relief under Rule 23(b)(2)**

Certification under 23(b)(2) is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2), Fed.R.Civ.P. "Rule 23(b)(2) focuses on class actions where 'broad, class-wide injunctive or declaratory relief is necessary.'" Choice Inc. of Tex. v. Graham, No. 04-1581, 2005 U.S. Dist. LEXIS 11585, at *12 (E.D. La. June 3, 2005)(citing Allison v. Citgo Petroleum Co., 151 F.3d 402, 413 (5th Cir. 1998)).

This Court must scrutinize the relief sought in the Second Amended Complaint "on a claim by claim basis" in order to determine whether certification under Rule 23(b)(2) is warranted. Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 976 (5th Cir. 2000). Plaintiffs seek damages "in excess of five million dollars" for breach of contract (count one), breach of the implied warranty of good faith and fair dealing (count two), breach of fiduciary duty (count three), and violation of the anti-tying provision of the Bank Holding Company Act, 12 U.S.C. § 1972 (count five). (Doc. # 72 at ¶¶ 105, 113, 141, 174). In count four, Plaintiffs seek a declaration that Defendant violated the Bank Holding Company Act and Florida

-14-

Statute § 626.9551. (Doc. # 72 at ¶ 120).  In count six, in which Plaintiffs allege that Defendant's actions were unconscionable, Plaintiffs "do not pray for monetary damages but, rather, for the Court to remedy the wrong by limiting the application of the unconscionable mortgage provisions by restricting Chase to require only an amount of insurance coverage that is required by law, and nothing more."  <u>Id.</u> at ¶ 156.

The Second Amended Complaint also contains the following request for injunctive relief:

> Defendants should be enjoined from: requiring borrowers to obtain flood insurance in amounts exceeding what is required to protect the lender's interest in the collateral property and, in any event, any amount in excess of that allowed by federal law; from sending notices to borrowers tending to mislead borrowers into believing that flood insurance amounts requested by Chase are required by federal law or the mortgages when that is not the case; from continuing its exclusive purchasing arrangement with ASIC; from enabling kickbacks to Chase or its affiliate; and from force-placing flood insurance with Chase's or its holding company's subsidiaries, partners, or affiliates.

<u>Id.</u> at ¶ 175.

"Rule 23(b)(2) applies only when a single, indivisible remedy would provide relief to each class member."  <u>Wal-Mart Stores</u>, 131 S. Ct. at 2545.  Evaluation of the array of remedies Plaintiffs request shows that Rule 23(b)(2)

certification is not appropriate.  This case is akin to <u>Bolin</u>.

There, the district court granted Rule 23(b)(2) certification

of a one-million-member class of bankrupt debtors alleging

that Sears engaged in illegal post-bankruptcy collection

practices. <u>Id.</u> at 972.  The Fifth Circuit reversed the class

certification order and explained that "Rule 23(b)(2) has two

requirements: (1) behavior generally applicable to the class

as a whole; (2) injunctive relief predominates over damages

sought." <u>Id.</u> at 975. The court further explained:

> "monetary relief predominates unless it is
> incidental to the requested injunctive or
> declaratory relief." [I]ncidental means that
> "damages flow directly from liability to the class
> as a whole on the claims forming the basis of the
> injunctive or declaratory relief."  Thus, damages
> may be incidental when they are "capable of
> computation by means of objective standards and not
> dependent in any significant way on the intangible,
> subjective differences of each class member's
> circumstances.  Liability for incidental damages
> should not require additional hearings to resolve
> the disparate merits of each individual's case."

<u>Id.</u> at 975-76 (citing <u>Allison</u>, 151 F.3d at 415). <u>See</u>

<u>also</u> <u>DWFII Corp. v. State Farm Mut. Auto Ins. Co.</u>, 469 F.

App'x 762, 765 (11th Cir. 2012)(same).

Along the same lines, in an ERISA case, the Eleventh

Circuit stated its agreement with the <u>Bolin</u> court's analysis

and determined that individual reliance issues precluded Rule

23(b)(2) class certification. <u>Heffner v. BCBS of Ala.</u>, 443

F.3d 1330, 1344 (11th Cir. 2006).   In finding "that the district court abused its discretion in certifying" the Rule 23(b)(2) class, the Heffner court also articulated that "certification under Rule 23(b)(2) is proper when the relief sought necessarily affects all class members" and explained that certification was not warranted when "success by the class representative" would not necessarily "result in relief to other class members . . . because, in order to be entitled to the relief that the class seeks, each plaintiff must prove" the elements of their claim. Id. at 1333-34, 45.

Upon due consideration of the allegations in the Second Amended Complaint and the foregoing authorities, the Court finds that the damages sought in this case are not incidental to the requests for nonmonetary relief, and certification pursuant to Rule 23(b)(2) is therefore inappropriate.

In addition, as was the case in Bolin, the Court finds that "most of the class has an interest in individualized damages determinations that Rule 23(b)(2) does not protect." 231 F.3d at 979.[3]   The Court recognizes that it enjoys broad discretion in determining whether to certify a class action,

---

[3] Indeed, Rule 23(b)(2) lacks the notice and opt-out safeguards present in class actions certified pursuant to Rule 23(b)(3).

and has the option of certifying certain claims but not others. However, the Court determines that the individualized issues that permeate every aspect of this case, from loan origination onward, preclude any form of class certification, including certification pursuant to Rule 23(b)(2).

### D.   <u>Damages under Rule 23(b)(3)</u>

Plaintiffs' last hope for class certification rests with Rule 23(b)(3), which imposes the requirements that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance) and (2) a class action is superior to other available methods for fair and efficient adjudication of the controversy (superiority).

### 1.   <u>Predominance</u>

Under Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1254 (11th Cir. 2004). Furthermore,

> Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. Common issues of fact and law predominate if they have a direct impact on every class member's effort

to establish liability and on every class member's
entitlement to injunctive and monetary relief.

Id. at 1255 (internal citations omitted).  As stated in Kerr
v. City of West Palm Beach, 875 F.2d 1546, 1558 (11th Cir.
1989), "[T]he issues in the class action that are subject to
generalized proof and thus applicable to the class as a whole,
must predominate over those issues that are subject only to
individualized proof." (internal citations omitted).

Defendant asserts that Plaintiffs are unable to
demonstrate predominance because, after any classwide issues
are resolved, the class plaintiffs would still be required to
present a great deal of individualized proof in order to
prevail on their claims.  The Court agrees and will explain
its reasoning as to each of Plaintiffs' claims.

## a.   Breach of Contract and of the Implied Warranty of Good Faith and Fair Dealing

Plaintiffs predicate their predominance argument on the
assertion that "Class members' mortgages do not differ in any
respect material to this litigation." (Doc. # 73 at 5).  As
proof that such mortgages are in fact uniform, Plaintiffs have
tendered to the Court for review mortgage forms used for
Federal Housing Administration loans (Doc. # 73-10), loans
sold to Fannie Mae (Doc. # 73-13), loans sold to Freddie Mac
(Doc. # 73-14), and loans guaranteed by the United States

-19-

Department of Veterans Affairs (Doc. # 73-11).  Plaintiffs'
Mortgage is also before the Court, and it differs
significantly from the aforementioned forms. (Doc. # 73-12).

As noted, Plaintiffs seek to certify two classes, one
concerning force-placed insurance and one concerning excess
flood insurance requirements.  However, through their
submissions, Plaintiffs tacitly acknowledge that the minimum
flood insurance requirements differ from borrower to borrower.
(Doc. # 73 at 5).  In some instances, the lender sets the
flood insurance requirements, and in other instances, such
requirements are established by a governmental agency.  In
addition, while Plaintiffs' Mortgage speaks directly to the
challenged commission payment in connection to force-placed
insurance, which Plaintiffs characterize as a kickback, not
all of the mortgage documents contain the same language.  As
stated in Sacred Heart Health Systems v. Humana Military
Healthcare Services, Inc., 601 F.3d 1159, 1171 (11th Cir.
2010), contract-based claims "are peculiarly driven by the
terms of the parties' agreement, and common questions rarely
will predominate if the relevant terms vary in substance among
the contracts."

A finding of predominance as to Plaintiffs' contract and
implied warranty of good faith and fair dealing claims is not

appropriate because, as asserted by Defendant, "each
borrower's claim necessarily depends on the particular
language of each mortgage." (Doc. # 87 at 19). A different
result is not mandated in light of Plaintiffs' contention that
Defendant acted pursuant to a "uniform policy." See Vega, 564
F.3d at 1272; Ruthstein v. Avis Rent-A-Car Sys., 211 F.3d
1228, 1233-35 (11th Cir. 2000)(class certification not
appropriate even if plaintiffs could establish that defendant
maintained a policy or practice of discrimination because
most, if not all, of the plaintiffs' claims would depend on
the resolution of case-specific factual issues). Because
resolution of the alleged class claims requires individualized
scrutiny of class members' divergent mortgage contracts
(including contract formation and loan origination issues), as
well as the circumstances present when Defendant force-placed
flood insurance, the Court cannot find that classwide issues
predominate over individual issues as to the contract-based
claims.[4]

_____

  [4] Plaintiffs assert that the requirement of predominance
is satisfied as to the contract-based claims because the
putative class members' mortgages, admittedly on  different
forms, are not "materially different."  The Court agrees with
Plaintiffs that certification of contract-based claims may be
appropriate "even when the claims of members of the class are
based on different contracts where the relevant contractual
                                          (continued...)

b.  __Breach of Fiduciary Duty__

"A fiduciary relationship is based on trust and confidence between the parties where confidence is reposed by one party and trust accepted by the other." White Constr. Co. v. Martin Marietta Materials, Inc., 633 F. Supp. 2d 1302, 1325 (M.D. Fla. 2009)(internal citations omitted).  "To state a claim for breach of a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  Id.

Under Florida law, a lender does not ordinarily owe a fiduciary duty to its borrower. See, e.g., Keys Jeep Eagle, Inc. v. Chrysler Corp., 897 F. Supp. 1437, 1443 (S.D. Fla. 1995)(holding that a financing agreement does not create fiduciary duties under Florida law); Metcalf v. Leedy, Wheeler & Co., 191 So. 690, 693 (Fla. 1939)(holding that, in an arms-

---

[4](...continued)
provisions raise common questions of law and fact and **do not differ materially.**" Sacred Heart Health Sys., 601 F.3d at 1171 (internal citation omitted; emphasis added).  However, the Court rejects Plaintiffs' position that the various mortgages contain the same material terms.  Plaintiffs' argument glosses over material differences present in the various mortgage forms with respect to insurance requirements.  As Plaintiffs' claims are based on Defendant's insurance requirements and the manner in which Defendant force places insurance, the differences from mortgage to mortgage on these salient terms is fatal to Plaintiffs' predominance analysis.

length transaction, there is no duty on either party to act for the benefit or protection of the other party); Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994)("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.").

However, a number of courts have recognized narrow circumstances that may give rise to a fiduciary relationship between a bank and its customer. See Jaffe v. Bank of Am., N.A., 395 F. App'x 583, 590 (11th Cir. 2010)("[S]pecial circumstances may impose a fiduciary duty where the lender receives any greater economic benefit than from a typical transaction."); Capital Bank, 644 So. 2d at 521 ("[W]e recognize a fiduciary relationship between a bank and a customer where the bank knows or has reason to know of the customer's trust and confidence under the circumstances exceeding an ordinary commercial transaction . . . . Where the lender has voluntarily assumed additional roles, accompanying responsibilities properly follow.").

Plaintiffs cannot establish that classwide issues predominate individual inquires with respect to Plaintiffs' breach of fiduciary duty claim.  As is evident from the

discussion above, any particular plaintiff's breach of fiduciary duty claim will rise or fall depending upon the circumstances of such plaintiff's relationship with the Defendant.   In addition, since Plaintiffs seek nationwide certification, the Court notes that these individualized inquiries may also change depending on the state of contracting.[5]   Accordingly, such claims are not appropriate for resolution on a classwide basis.

### c.   <u>Unconscionability</u>

Under Florida law, to prevail on an unconscionability claim, a plaintiff must demonstrate procedural and substantive unconscionability.   <u>Bland v. Health Care & Ret. Corp. of Am.</u>, 927 So. 2d 252, 256 (Fla. 2d DCA 2006). "Procedural unconscionability relates to the manner in which the contract is made and involves consideration of issues such as the

---

[5] Defendant correctly points out that "[f]iduciary duty claims vary by state based on what constitutes a fiduciary relationship and because there is no single standard for governing liability." (Doc. # 87 at 26 n. 17).   In addition, Defendant identifies differences in the limitations period for bringing claims for breach of a fiduciary duty. <u>Compare</u> <u>Goldstein v. Malcolm G. Fries & Assoc., Inc.</u>, 72 F. Supp. 2d 620, 625 (E.D. Va. 1999)(one year statute of limitations for breach of fiduciary duty claims in Virginia) <u>with</u> <u>Serio v. Rhulen</u>, 24 A.D. 3d 1092, 1095 (N.Y. App. Div. 2005)(six year statute of limitations for breach of fiduciary claims in New York).   Variations in state law, present as to each of the relevant claims, further diminish Plaintiffs' predominance argument.

bargaining power of the parties and their ability to know and understand the disputed contract terms." Id. Substantive unconscionability, on the other hand, "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." Id. (internal citations omitted). That is, "no man in his senses and not under delusion would make [the contract] on the one hand, and [] no honest and fair man would accept [it] on the other." Id. (internal citations omitted).

Neither prong of the unconscionability analysis meets the predominance standard. Procedural unconscionability cannot be established on a classwide basis because a finding of procedural unconscionability must be based on individual determinations, such as the relative bargaining power of the parties. Likewise, substantive unconscionability does not lend itself to classwide proof because the Court lacks a homogenous contract to evaluate for the presence of egregious terms. See Woebse v. Health Care & Ret. Corp. of Am., 977 So. 2d 630, 630 (Fla. 2d DCA 2008)(providing fact intensive analysis of both procedural and substantive unconscionability and evaluating the facts present at the time of contracting, including time pressure to sign the document without reading it).

Because there are major differences in the manner in which the fifty states treat unconscionability, this Court is not alone in its finding that unconscionability determinations are not suitable for classwide adjudication.   See, e.g., Harris v. Sand Canyon Corp., No. 2:08-cv-3692, 2010 U.S. Dist. LEXIS 74228, at *35 (D.S.C. July 22, 2010)(declining to certify plaintiffs' unconscionability claims because "a determination of Plaintiffs' unconscionability claim would necessarily include consideration of the circumstances surrounding the execution of the contract and the fairness of the contract as a whole.").

### d.   **Bank Holding Company Act**

Plaintiffs seek damages for violation of the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972. To succeed, Plaintiffs must demonstrate that Defendant placed a condition on the extension of credit or provision of any bank service and that such condition was: (1) an unusual banking practice; (2) an anti-competitive tying arrangement; and (3) a practice that benefits the bank. See 12 U.S.C. § 1972(1); Parsons Steel, Inc. v. First Ala. Bank of Montgomery, 679 F.2d 242, 245 (11th Cir. 1982).

The two classes Plaintiffs seek to represent do not bear on these elements.  As noted, Plaintiffs seek an Order certifying the following classes:

> **Class 1:** All United States residents with mortgages owned or serviced by JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC who, during the applicable statute of limitations, were charged for a force-placed flood insurance policy, and who, at any time, paid, or who still owe, premiums for such force-placed policies.
>
> **Class 2:** All United States residents with mortgages owned or serviced by JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC who, during the applicable statute of limitations, increased their flood insurance coverage to an amount exceeding the unpaid principal balance of their mortgage loan after receiving notice from JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC stating that their existing flood insurance coverage was insufficient.

The class definitions are silent on the issues of tying and unusual bank practices.  In addition, even assuming the alleged violations of the Bank Holding Company Act related to either of the putative classes, the Court determines that individual issues would predominate the litigation with respect to such claims.  This is because an individual analysis of each mortgage holder's relationship with Defendant would be required in order to assess whether a violation of the Act occurred.

## 2.  Superiority

The superiority requirement of Rule 23(b)(3) focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." <u>Klay</u>, 382 F.3d at 1269.  In addressing the requirement of superiority, the Court must "determine whether there is a better method of handling the controversy other than through the class action mechanism." <u>In re Managed Care Litig.</u>, 209 F.R.D. 678, 692 (S.D. Fla. 2002). "It is only when [management] difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper." <u>Carnegie v. Mut. Sav. Life Ins. Co.</u>, No. 99-cv-3292, 2002 U.S. Dist. LEXIS 21396, at *76-77 (N.D. Ala. Nov. 1, 2002).

The Court has examined the factors enumerated in Rule 23(b)(3)(A)-(D), such as "the class members' interest in individually controlling the prosecution . . . of separate actions," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and manageability issues.  After so doing, the Court determines that classwide resolution of the dispute is not superior to other methods of adjudication.  This is especially so because

the Court has already determined that individual issues predominate over those issues which may be addressed on a classwide basis. "The predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Klay, 382 F.3d at 1269. As the inverse is also true, the Court finds that Plaintiffs cannot establish the superiority of classwide litigation under the facts presented.

## IV. **First Filed Rule and All-Writs Act Motion**

Plaintiffs request an order requiring Defendant "to seek approval from this Court of any proposed settlement affecting the interests of members of the putative Classes who are residents or property owners in the state of Florida, or, in the alternative, to enter an injunction under the All-Writs Act enjoining the settlement of any claims affecting members of the proposed Classes who are residents or property owners in the state of Florida absent approval by this Court." (Doc. # 120 at 6-7). As this Court has denied the Motion for Class Certification, the Court determines that Plaintiffs' Motion to Preserve this Court's Jurisdiction Over Florida Class Members

Pursuant to the First-Filed Rule and All Writs Act is moot. The Court accordingly denies the Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiffs' sealed Motion for Class Certification (Doc. # 73) is **DENIED.**

(2)   Plaintiffs' Motion to Preserve this Court's Jurisdiction Over Florida Class Members Pursuant to the First-Filed Rule and All Writs Act (Doc. # 120) is **DENIED as MOOT.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>5th</u> day of February, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record